631 A.2d 1084

**SUN OIL COMPANY, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (THOMPSON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 7, 1992.

Decided Sept. 16, 1993.

David A. Pennington, for petitioner.

M. Mark Mandel and John J. Del Casale, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Sun Oil Company (Employer) petitions for review of an order of the Workmen's Compensation Appeal Board (WCAB) affirming a referee's decision granting Beverly K. Thompson's (Claimant's) petition for modification pursuant to § 413 of The Pennsylvania Workmen's Compensation Act (Act).[1]

On October 20, 1976, Claimant was injured in an automobile accident while in the course and scope of her employment with Employer. Claimant returned to work on November 1, 1976, although complaining of neck and arm pain. She continued to work for Employer until October 3, 1977, when she was terminated for refusing to submit to a physical examination as part of a workmen's compensation claim she had filed.

While working at Sun Oil, Claimant attended law school on a part-time, evening basis. She worked part-time as a law clerk with the Delaware County District Attorney's Office

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1031.

from September 1978 until May 1979, when she graduated from law school. Claimant taught a business law course at Camden County College from September 1979 until April 1980. She started her own law practice in October 1980 and continued in private practice until 1987. On May 26, 1989, she accepted a position as legal counsel for Stout Environmental, Incorporated.

By order dated March 3, 1981, a referee awarded Claimant temporary total disability benefits for the periods of October 20, 1976 through October 31, 1976 and August 9, 1977 through August 28, 1977, during which time she was hospitalized due to her work-related injury. (R.R. at 619a.) The same order suspended Claimant's right to compensation as of August 29, 1977. Thereafter, Claimant and Employer executed several supplemental agreements relating to payment of certain additional claims involving the October 20, 1976 accident. The last such supplemental agreement was dated January 21, 1982.

On April 8, 1983, Claimant filed a claim petition for compensation in which she asserted that she was disabled from February 27, 1983 as a result of the October 20, 1976 automobile accident. At a hearing on September 20, 1983, counsel for both parties and the referee engaged in a colloquy on the record whereby it was agreed that Claimant's claim would be deemed a petition for modification. It was further agreed that Claimant's petition would encompass additional claims for (1) unpaid benefits under the January 21, 1982 supplemental agreement; (2) disfigurement as a result of scarring; and (3) interest, penalties and attorney's fees for knowing, intentional, and unreasonable contest and delay by Employer.

Claimant testified on her own behalf and also offered the depositions of Michael O'Connor, M.D., a neurosurgeon, and Stanley Schiff, M.D., board certified in internal medicine and cardiology. Employer offered the deposition of William H. Simon, M.D., a neurosurgeon. By award and order dated February 7, 1986, the referee granted Claimant's petition for modification but failed to find an unreasonable contest by Employer or require Employer to pay counsel fees. Both parties appealed. By order dated September 21, 1987, the

WCAB reversed and remanded for additional findings regarding the weekly rate of compensation for specific periods of disability, the causal relationship between the work injury and certain medical expenses and a specific disfigurement award.

At the remand hearings, Claimant presented certain wage and income tax information and offered the deposition of Leonard A. Bruno, M.D., a neurosurgeon. Employer offered no additional evidence. On June 5, 1990, the referee granted Claimant's petition for modification and awarded compensation for disability at the rates set forth in finding of fact No. 24.[2] The referee also awarded compensation for Claimant's disfigurement claim. The order further directed Employer to pay medical expenses and interest as set forth in the findings of fact. Lastly, the order directed Employer to pay Claimant's counsel fees. No award was made for penalties for unreasonable contest and delay. The WCAB affirmed.

On appeal,[3] Employer raises three issues: (1) whether the WCAB erred in concluding that there was substantial evidence to support the referee's finding that Claimant had no income in the years 1984, 1985 and 1986; and (2) whether the WCAB erred in concluding that there was substantial evidence to support the referee's finding that a causal relationship existed between surgeries on Claimant's lumbar spine and the October 20, 1976 work injury; and (3) whether this case should be remanded in light of the possible existence of income records which Claimant asserted did not exist at the time of the proceedings before the referee.

Employer contends that the referee's Finding of Fact No. 7(s)–(u), which essentially found that Claimant had no income for the years 1984 to 1986,[4] is not supported by substantial evidence. We disagree.

2. The referee's order also assessed interest at a rate of 10 per centum per annum on all deferred payments of compensation.

3. Our scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Ashe v. Workmen's Compensation Appeal Board (American Steel & Aluminum Corporation)*, 140 Pa.Commonwealth Ct. 615, 594 A.2d 824 (1991).

4. The referee's Finding of Fact No. 7 provides in pertinent part:

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Macaluso v. Workmen's Compensation Appeal Board (Philadelphia College of Osteopathic Medicine)*, 142 Pa.Commonwealth Ct. 436, 597 A.2d 730 (1991). If findings of fact by the referee are supported by substantial evidence, they must be accepted as conclusive. *Hemmler v. Workmen's Compensation Appeal Board (Clarks Summit State Hospital)*, 131 Pa.Commonwealth Ct. 24, 569 A.2d 395 (1990). As the ultimate finder of fact, it is exclusively within the province of the referee to determine witness credibility. *Wells–Moore v. Workmen's Compensation Appeal Board (McNeil Consumer Products Co.)*, 144 Pa.Commonwealth Ct. 382, 601 A.2d 879 (1992).

At the June 28, 1989 remand hearing before the referee, Claimant presented tax returns for the years 1976, 1977, 1980, 1981, 1982 and 1983. She presented employment records for 1978 and 1979. Claimant did not produce tax returns or employment records for the years 1984, 1985 and 1986. Rather, she testified that she had no taxable income for those years (R.R. at 608a–610a, 613a) and for that reason did not file tax returns in those years (R.R. at 608a).

If believed, Claimant's testimony that she had no taxable income in the years 1984, 1985 and 1986 was sufficient to convince a reasonable mind that she earned no income in those years. The referee found her testimony on this point to be credible; thus, we must accept Finding of Fact No. 7(s)–(u) as conclusive. *Hemmler.*

s. From January 1, 1984 through December 31, 1984, Claimant was disabled from any gainful employment due to the injuries sustained in the October 20, 1976 motor vehicle accident. During this calendar year, Claimant was hospitalized on four (4) different occasions for a period of thirty one (31) days. Although Claimant was able to perform a minimal amount of work, she earned no wages for performing that work.

t. During the calendar year 1985, Claimant was rarely able to work. Although claimant did perform some legal services on this rare basis, Claimant received no income for her services.

u. During calendar year, 1986, Claimant was rarely able to work. Although Claimant performed some legal services, Claimant earned no income during 1986.

■ Employer's second contention is that the WCAB erred in concluding there was substantial evidence that a causal relationship existed between surgeries performed on Claimant's lumbar spine and the October 20, 1976 work injury.[5] We disagree.

Dr. O'Connor testified that prior to her work accident, Claimant had no neck or low back pain (R.R. at 183a), but that after the accident, she had low back pain and her complaints were substantiated by an abnormal CAT scan (R.R. at 183a). Dr. O'Connor further testified that the only way to treat this condition was to perform a lumbar laminectomy and that such surgery was contemplated for the future (R.R. at 187a–88a). Dr. Bruno testified that Dr. O'Connor performed the contemplated surgery in October 1984. (R.R. at 519a.) This testimony is sufficient to convince a reasonable mind that the lumbar surgery performed by Dr. O'Connor was necessitated by Claimant's 1976 work injury.

Dr. Bruno testified that he performed two subsequent surgeries on Claimant's lumbar spine. (R.R. at 519a.) Employer argues that Dr. Bruno never attributed the necessity of these surgeries to Claimant's work injury but rather stated that the surgeries were necessitated by Claimant's previous lumbar

5. The referee made twenty-eight findings in this matter, many of which have numerous sub-findings. Employer took exception to all but six of these findings. Of the eighteen findings to which Employer objects, the following are relevant to Employer's argument:

14. The testimony of Dr. O'Connor confirms that the injuries suffered by the Claimant in the October 20, 1976 motor vehicle accident will result in recurrent bouts of neck and low back pain, which permanently disables the Claimant from performing her duties as a tax agent for the Defendant and inhibits claimant's ability to perform her duties as a trial attorney.

15. The testimony of Dr. O'Connor confirms that the October 18–30, 1984 and November 1–10, 1984 hospitalizations of the Claimant were causally related and necessitated by the October 20, 1976 motor vehicle accident.

18. The testimony of Leonard A. Bruno, M.D. confirms that Claimant first began treating with him on March 22, 1985. Dr. Bruno's testimony further confirms that the May 5, 1985–June 2, 1985 admission to Germantown Hospital was causally related and necessitated by the injuries sustained by the Claimant in the October 20, 1976 motor vehicle accident.

surgery. However, we find this to be a mischaracterization of Dr. Bruno's testimony. Dr. Bruno stated:

> The disc aspiration and lumbar laminectomy that I performed on Miss Thompson were related to the injuries she sustained in October 1976 because they were necessary due to previous surgery that she had had in October of 1984 *and the results of the initial injury to the disc that she suffered in October of 1976.*

(Emphasis supplied) (R.R. at 519a.) This testimony is sufficient to convince a reasonable mind that there was a causal link between the lumbar surgery performed by Dr. Bruno and Claimant's work injury.

It is of no consequence that Employer's medical witness, Dr. Simon, testified that Claimant's lumbar surgeries were unrelated to her work injury. The referee rejected Dr. Simon's testimony in favor of that offered by Claimant's medical witnesses. The referee is free to accept or reject any witness's testimony, including medical witnesses, in whole or in part. *Northeastern Hospital v. Workmen's Compensation Appeal Board (Turiano)*, 134 Pa.Commonwealth Ct. 164, 578 A.2d 83 (1990).

We turn now to Employer's final contention on appeal, that a remand is necessary in light of the possible existence of income records which Claimant asserted did not exist at the time of the compensation proceedings. Employer asserts that following the decision of the referee, Claimant was suspended from the practice of law for two years beginning May 17, 1991 for misappropriation of funds. According to Employer, if sufficient records exist to document misappropriation of funds, then sufficient records should exist to corroborate or deny claimant's assertions before the referee in her testimony concerning income.[6]

6. Employer fails to allege that any misappropriation of funds by Claimant took place during the years 1984, 1985 and 1986, the years for which Claimant failed to produce tax returns; however, this is a curable defect.

In raising this issue,[7] Employer seeks to present newly-discovered evidence regarding Claimant's income records which were not available when this matter was before the referee. The appropriate means of seeking to present after-discovered evidence is to petition the WCAB directly for rehearing under § 426 of the Act, 77 P.S. § 871. *Pasquarelli v. Workmen's Compensation Appeal Board (Western Electric)*, 130 Pa.Commonwealth Ct. 228, 567 A.2d 792 (1989). Instead, Employer has filed a petition for review before this court, requesting that we remand the case to the WCAB.

We have held that a petition presented under an improper section of the Act will be deemed to have been presented under the proper section. *Dunmore School District v. Workmen's Compensation Appeal Board (Lorusso)*, 89 Pa.Commonwealth Ct. 368, 492 A.2d 773 (1985). At an earlier point in these proceedings, Claimant benefitted from this practice when her claim petition was deemed to be a petition for modification. It would be inequitable to deny Employer the same protection now. Thus, we deem the third issue raised in Employer's petition for review to be a petition for rehearing which we remand to the WCAB for consideration.[8]

In doing so, we note that the decision of whether to grant or deny a rehearing is within the WCAB's discretion. *Chadwick v. Workmen's Compensation Appeal Board (Benjamin Franklin Hotel)*, 132 Pa.Commonwealth Ct. 525, 573 A.2d 652 (1990), *appeal denied*, 527 Pa. 604, 589 A.2d 694 (1990).

7. Initially, we note that Employer's brief contains a technical defect with regard to this issue. Although this issue is raised in the "Argument" portion of Employer's brief, it is not included in Employer's "Statement of the Issues Presented." Pa.R.A.P. 2116(a) mandates that no point will ordinarily be considered which is not set forth in the statement of questions involved or suggested thereby. We will not, however, dismiss this issue merely for this technical defect, as the Argument portion of Employer's brief gave Claimant ample notice of the nature of Employer's argument.

8. Although more than eighteen months have passed since the WCAB's order of January 31, 1991, the WCAB may still act upon Employer's petition for review—now deemed a petition for rehearing—because Employer filed the petition well before eighteen months had passed. *Rice v. Workmen's Compensation Appeal Board (Rockwell International)*, 138 Pa.Commonwealth Ct. 555, 588 A.2d 1011 (1991).

However, the WCAB must do so when justice requires. *Id.* In considering Employer's petition, the WCAB should be mindful of the seriousness of the allegations Employer is making against Claimant, who, as an attorney, is under special obligation never to make a false statement of material fact to a tribunal. Pennsylvania Rules of Professional Conduct, Rule 3.3. Allowing Claimant to escape rehearing on this matter would work an injustice on Employer.[9]

For the above reasons, we affirm as to the WCAB's conclusion that there was substantial evidence to support the referee's findings but remand to the WCAB to rule on Employer's petition for rehearing.

## ORDER

AND NOW, this 16th day of September, 1993, the order of the Workmen's Compensation Appeal Board, dated January 31, 1992, is affirmed as to the WCAB's conclusion that there was substantial evidence to support the referee's findings, but we remand the case to the WCAB to rule on Employer's petition for rehearing.

Jurisdiction relinquished.

SILVESTRI, Senior Judge, concurring and dissenting.

Sun Oil Company (Sun Oil) does not challenge the award of medical expenses incurred as a result of surgeries and treatments to the cervical portion of Beverly K. Thompson's (Thompson's) spine [1] nor does it contest, with the noted excep-

---

**9.** Although we stated above that this court must accept Finding of Fact No. 7(s)–(u) as conclusive, Employer's newly-discovered evidence may require the referee to re-evaluate this finding after re-hearing.

**1.** The referee made an award for medical expenses, as set forth in Finding of Fact No. 25, totaling $110,976.76, for various services beginning August of 1981 through June of 1985. It is Sun Oil's contention that the medical expenses, incurred after March 16, 1983, totaling approximately $68,304.00, were not necessary nor reasonably related to Thompson's work-related accident in October of 1976 as those expenses were attributable to the medical services rendered to the lumbar portion of Thompson's spine. Sun Oil does not contest the medical expenses incurred prior to March 16, 1983 totaling approxi-

tion of the years 1984–1986, the referee's finding that Thompson was disabled from any gainful employment[2] due to the injuries sustained in the October 20, 1976 motor vehicle accident. I concur insofar as the majority affirms the award of compensation benefits and medical expenses that are not in dispute; however, I disagree with the majority's affirmance in all other material respects and I dissent.

Sun Oil raises only the following two questions, which are set forth in the statement of issues presented portion of its brief:[3]

I. Did the Workmen's Compensation Appeal Board err in affirming the Decision of the Referee where claimant failed to produce any documentation to prove her assertion that she had "no appreciable income" in 1984, 1985, and 1986, despite the fact that claimant was maintaining her own law practice, employing other attorneys, law clerks, and secretarial help?

II. Did the Workmen's Compensation Appeal Board err in affirming the Decision of the Referee in finding that claimant had presented substantial, competent medical evidence linking her various surgeries to her original work-related injury?

Sun Oil, in support of the first question, asserts that the findings of the referee that Thompson had no income for the

mately $42,672.76 as those expenses were attributable to medical services rendered to the cervical portion of Thompson's spine.

2. In Finding of Fact No. 7, the referee found that from October 3, 1977 through May 26, 1989, Thompson continued to suffer from the injuries sustained in the 1976 automobile accident and that those injuries produced various levels of disability which, in turn, permitted Thompson to work only on an intermittent basis.

3. In the argument portion of its brief, Sun Oil also asserts that following the decision of the referee, Thompson was suspended from the practice of law for two years beginning May 17, 1991 for misappropriation of funds. Sun Oil contends that a remand is necessary in light of the possible existence of certain income records which Thompson claimed did not exist at the time of the compensation proceedings. However, pursuant to Pa. R.A.P. 2116(a) which mandates that no point will be considered which is not set forth in the statement of questions involved or suggested thereby, this Court is precluded from addressing this particular contention.

years 1984–1986 are not supported by the evidence of record, and secondly, the Board erred as a matter of law in imposing the burden on Sun Oil to present evidence that Thompson did have income during the period 1984–1986.

In granting Thompson's petition for modification, the referee made Finding of Fact No. 7, which provides in pertinent part as follows:

s. From January 1, 1984 through December 31, 1984, Claimant was disabled from any gainful employment due to the injuries sustained in the October 20, 1976 motor vehicle accident. During this calendar year, Claimant was hospitalized on four (4) different occasions for a period of thirty one (31) days. Although Claimant was able to perform a minimal amount of work, she earned no wages for performing that work.

t. During the calendar year 1985, Claimant was rarely able to work. Although Claimant did perform some legal services on this rare basis, Claimant received no income for her services.

u. During calendar year, 1986, Claimant was rarely able to work. Although Claimant performed some legal services, Claimant earned no income during 1986.

As the majority correctly notes, Thompson presented tax returns for the years 1976, 1977, 1980, 1981, 1982 and 1983 along with employment records for 1978 and 1979. The majority also correctly notes that Thompson did not produce tax returns or any other employment records for the year 1984–1986. Significantly, Thompson did not testify that she had "no income" for the years 1984–1986 but rather testified on cross-examination that she had no "appreciable income" during that period. (R.R. 613a.) Thompson's self-serving statements that she had no "taxable or appreciable income" during 1984, 1985 and 1986 as a reason for not having filed income tax returns for those periods[4] does not constitute

4. While not containing any specific reference to the maintenance of business records, the Pennsylvania Rules of Professional Conduct inferentially, impliedly, and necessarily require that a lawyer should be competent, prompt and diligent in all professional functions. *See,*

evidence of record from which the referee could find that she had "no income" during those years. Accordingly, the referee's Finding of Fact No. 7(s–u), namely that Thompson had no income during the years 1984–1986, are not supported by substantial competent evidence.

As to Sun Oil's second argument, which is not addressed by the majority, the Workmen's Compensation Appeal Board (Board), in affirming the decision of the referee, stated:

Claimant testified that she was not able to present any documentation pertinent to filing income tax returns for 1984, 1985, and 1986 because she did not file returns for those years since she had no appreciable income. Defendant argues that since Claimant, a lawyer who completed law school after her auto accident, showed gross receipts from her law practice in 1982 of $111,510 and $150,214 in 1983, that it was not reasonable to believe that she had no appreciable income the following years. *We have reviewed this record and find that Defendant has submitted no independent evidence or contradictory evidence regarding Claimant's capacity to earn income from private law practice in the years 1984, 1985, and 1986, given Claimant's periods of disability, hospitalizations, surgeries, expenses, etc. Thus, the Referee has accepted Claimant's uncontradicted testimony regarding her earnings or lack thereof for those years.* His findings thereon certainly are supported by evidence of record.

(R.R. 642a–643a.) (Emphasis added.)

Sun Oil contends that the burden of proof was upon Thompson to demonstrate a loss of earnings and that it was not required to produce contradictory evidence of the same. When, as here, a claimant seeks to have a suspension of benefits lifted, the claimant is required to demonstrate only that the reasons

Preamble: A Lawyer's Responsibilities. Additionally, a lawyer's conduct regarding business and personal affairs should conform to the requirements of the law. *Id.* Accordingly, the aforementioned requirements mandate, at a minimum, that a lawyer charged with the responsibility of administering a law firm, as here, keep records of such affairs as a sound business practice and file business and personal income tax returns as required by both federal and state law.

for the suspension no longer exist. *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990); *Stuart Painting Company v. Workmen's Compensation Appeal Board (Asvestas)*, 148 Pa.Commonwealth Ct. 411, 611 A.2d 787 (1992). "Simply, a claimant must show that while his disability has continued, his loss of earnings has recurred." *Pieper*, 526 Pa. at 33, 584 A.2d at 304. Thus, Sun Oil was not required to submit independent or contradictory evidence regarding Thompson's capacity to earn income from private law practice and the Board erred by placing such a requirement upon Sun Oil. Thompson's testimony that she had no "appreciable income" from the practice of law during 1984, 1985 and 1986, demonstrates that she did have income. Having so established by her own testimony, it was incumbent upon Thompson, and not Sun Oil, to establish the extent thereof in order to enable the referee and the Board to make a determination as to whether or not there was a recurrence of a loss of earnings. There being no substantial and competent evidence to support the findings of the referee that Thompson earned no income during 1984, 1985 and 1986, the Board erred in affirming the referee.

As to the second question, Sun Oil contends that the Board erred in finding that Thompson presented substantial, competent medical evidence linking her "various surgeries" to her original work-related injury. The essence of Sun Oil's argument is that the medical services, in the form of surgery, diagnostic treatment, and physical therapy, rendered to the lumbar portion of Thompson's spine, were not necessary nor reasonably related to her original work-related injury. Thus, while conceding that Thompson's neck injury was related to the October 20, 1976 motor vehicle accident, Sun Oil contends that Thompson failed to establish that the medical services rendered to her lower back were related to the original work-related accident.

The majority correctly notes that Dr. O'Connor, in his deposition of September 24, 1984, testified that the neck surgeries which he performed on Thompson, namely the cervical root decompression of May 28, 1982 and the anterior fusion

of March 2, 1983, were causally related to her accident of October 20, 1976. Significantly, at the time of his deposition on September 24, 1984, Dr. O'Connor had not yet performed any back surgery on the lumbar portion of Thompson's spine; however, Dr. O'Connor did testify that surgery in the nature of a lumbar laminectomy was scheduled to be performed on Thompson by him in October of 1984, the purpose of which was to relieve her low back pain.

The record demonstrates that Dr. O'Connor did in fact perform the lumbar laminectomy in October of 1984. Significantly, during the September 24, 1984 deposition, Dr. O'Connor was neither asked nor did he testify that the lumbar laminectomy proposed for October of 1984 was in any way causally related to the 1976 automobile accident. Furthermore, after performing the lumbar laminectomy in October of 1984, Dr. O'Connor was not called by Thompson to testify as to the causative relationship between the surgery he performed to the lumbar portion of Thompson's spine and her automobile accident of October 1976.

Dr. Bruno testified that he performed back surgery on Thompson in the nature of a disc aspiration on May 10, 1985 and a lumbar laminectomy on May 17, 1985. Dr. Bruno testified that the surgeries which he performed on Thompson's back were necessary due to the previous surgery that she had had in October of 1984, that being the lumbar laminectomy performed by Dr. O'Connor. No where in the record does Dr. Bruno ever opine that the surgeries which he performed on the lumbar portion of Thompson's spine were in any way related to the October 20, 1976 automobile accident or to the neck surgeries performed by Dr. O'Connor in 1982 and 1983. The portion of Dr. Bruno's testimony relied upon by the majority as sufficiently supplying the causal link between the surgery and the work injury is taken out of context. Dr. Bruno, in offering the statement relied upon by the majority, was responding to the following question:

Q   Doctor, *I want you to assume* that on September 24, 1984, Dr. Michael O'Connor previously testified in this case and opined that the lumbar laminectomy that he was

to perform on Miss Thompson in October of 1984, *and which was later performed by him on the 19th of October, was causally related to the October 20, 1976 automobile accident.*

*Now, based upon that assumption* and the treatment that you provided to Miss Thompson from March of 1985 through September of 1985, do you have an opinion based upon a reasonable degree of medical certainty as to whether there is any relationship between the two pieces of surgery performed by you, that is the disc aspiration and the lumbar laminectomy, and the October 20, 1976 automobile accident?

(R.R. 518a–519a) (Emphasis added).

As previously noted, Dr. O'Connor was deposed prior to having performed the 1984 lumbar laminectomy. Equally significant is the fact that Dr. O'Connor never opined, as suggested by the question, that Thompson's 1984 lumbar laminectomy was causally related to the 1976 automobile accident. Accordingly, the question as put forth to Dr. Bruno was based upon an erroneous assumption and as a result, any answer given in response thereto cannot serve as a means of supplying the causative link between Thompson's back surgeries of 1985 and her work-related injury of 1976. Accordingly, I disagree with the majority's conclusion that there was sufficient evidence to convince a reasonable mind that there was a causal link between the lumbar surgeries performed by Drs. O'Connor and Bruno and Thompson's work injury.

Having determined that Thompson failed to establish a loss of earning power for the years 1984–1986 and also failed to establish a causative link between the October 20, 1976 accident and the medical expenses incurred after March 16, 1983, I would vacate the order of the Board and remand the matter with directions to remand to the referee to recalculate compensation benefits and medical expenses consistent with this dissent.