**CITY OF PHILADELPHIA, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CRONIN), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1997.

Decided Jan. 22, 1998.

Valerie H. Lieberman, Philadelphia, for petitioner.

Maria Terpolilli, Philadelphia, for respondent.

Before COLINS, President Judge, SMITH, J., and LORD, Senior Judge.

SMITH, Judge.

The City of Philadelphia (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) determining that the death of Thomas Cronin (Decedent) was compensable and granting the fatal claim petition filed by his widow Maryann Cronin (Claimant) on behalf of herself and her three minor children. Employer states the questions involved as whether the Workers' Compensation Act (Act)[1] precludes an award of benefits where a decedent's death was caused by illegal drug use; whether the WCJ and the Board erred in applying the substantial contributory factor test; whether substantial evidence supports the award of fatal claim benefits where Decedent's death was caused by cocaine intoxication; and whether Employer was entitled to a credit for injured-on-duty payments that it made to Decedent.

The WCJ found that Decedent worked for Employer as a fire fighter for 16 years; for 15 of those years he was regularly exposed to heat, smoke, fumes and gases under emergency conditions. The parties stipulated that Decedent had occupational exposure pursuant to Section 301(c)(2) of the Act, 77 P.S. § 411(2).[2] Following a back injury in 1988,

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1—1041.4; 2501—2626.

2. This Section defines "injury," "personal injury" and "injury arising in the course of [an employee's] employment" as including occupa-

Decedent intermittently worked on light duty or was paid injured-on-duty benefits. He died at his home on October 7, 1990.

Claimant's medical witness, Harry Shubin, M.D., reviewed extensive medical records, relating primarily to Decedent's course of treatment over a year and a half for severe back and leg pain. He testified that Decedent, age 37, had the blood vessels of a 60–year–old. The WCJ expressly credited the testimony of Dr. Shubin that Decedent's exposure as a fire fighter caused early development of atherosclerosis, that he had blockage in three coronary blood vessels and that his death was causally related to his exposure. Employer's witness Norman Makous, M.D., testified that Decedent died from an underlying, advanced problem of arteriosclerosis or atherosclerotic coronary disease, with cocaine intoxication as a contributing cause. The WCJ credited Dr. Makous' testimony regarding the cause of Decedent's death. He rejected Dr. Makous' testimony to the extent that the doctor opined that fire fighting per se is not a risk factor for heart disease, despite the presumption contained in Section 108(*o*) of the Act. The WCJ also credited in part the testimony on Employer's behalf of Dr. Ian Hood, the coroner who signed the death certificate. The death certificate stated that the immediate cause of death was arteriosclerotic cardiovascular disease, with cocaine intoxication as a contributing cause. The WCJ discredited Dr. Hood's statement that he would be able to correct an error on a death certificate, even three years after it was filed.[3]

The WCJ found that the medical evidence from both Claimant and Employer supported a determination that Decedent's occupational cardiovascular arteriosclerosis was a substantial contributing factor to his death and that cocaine intoxication was a contributing factor.

He concluded that Claimant was entitled to death benefits, and he ordered them accordingly, with the weekly amount to be reduced after the second and third children reached the age of 18. Further, the WCJ awarded payments for funeral expenses, interest on past due amounts and costs of litigation, and he approved Claimant's counsel's fee of 13 percent of all compensation. The Board affirmed and this appeal followed.

As Claimant emphasizes, this Court's review of a decision of the Board is limited to determining whether there was a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence in the record. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *County of Delaware v. Workmen's Compensation Appeal Board (Thomas)*, 168 Pa.Cmwlth. 231, 649 A.2d 491 (1994), *appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995).

Employer first contends that the WCJ's recognition that cocaine intoxication was a contributing factor to Decedent's death precludes an award of benefits. Employer quotes from the proviso contained in Section 301(a) of the Act, 77 P.S. § 431: "Provided, That no compensation shall be paid when the injury or death is intentionally self inflicted, or is caused by the employe's violation of law. . . ." Employer acknowledges that Section 301(a) places the burden of proof of this fact on the employer, *id.*, but it notes that an employer need not prove the violation of law beyond a reasonable doubt. *Franks v. Workmen's Compensation Appeal Board (SEPTA)*, 148 Pa.Cmwlth. 25, 613 A.2d 36

---

tional disease as defined in Section 108 of the Act, added by Section 1 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1. The Section 108 definition includes:

(*o*) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or *safety of the public, caused by extreme over-exertion in times of stress or danger or by*

exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such [fire fighters].

**3.** Dr. Hood testified that, where drugs are involved in a death, the certificate should indicate the manner of death as "accident" rather than "natural" but that the apparent error in this case could be corrected. Dr. Hood's Deposition, N.T, pp. 43–45.

(1991).[4] As Employer notes, Section 301(a) was amended by Section 5 of the Act of July 2, 1993, P.L. 190, by the addition after the reference to the employe's violation of law of the phrase "including, but not limited to, the illegal use of drugs."

Employer notes that cocaine is a controlled substance and asserts that the presence of cocaine in Decedent's bloodstream should lead to a finding of a violation of law. Because the WCJ found cocaine intoxication to be a contributing cause of death, Employer contends that it met its burden of establishing a causal connection between Decedent's blood cocaine level and his death. Employer stresses that Dr. Hood testified that the toxicology report on Decedent showed that he had a very high level of cocaine in his blood, ten times greater than that of most people examined by his office who die from cocaine. Dr. Hood stated also that there is no lower or upper level of toxicity and that the office did see a few other people with levels that high. Dr. Hood's Deposition, N.T., pp. 18, 43–45. The WCJ did not make specific findings based upon this testimony.

Next Employer argues that the WCJ erred by applying the "substantial contributing factor" test for compensability under the occupational disease provisions of the Act, quoting one statement of this test as follows:

> '[W]here there are multiple causes of death and the immediate cause was non-compensable, the requirements of § 301(c)(2) may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and that it was a substantial contributing factor among the secondary causes in bringing about the death.'

*Porter v. Combustion Engineering, Inc.,* 95 Pa.Cmwlth. 150, 504 A.2d 977, 979 (1986) (quoting *McCloskey v. Workmen's Compensation Appeal Board,* 501 Pa. 93, 101, 460 A.2d 237, 241 (1983) (plurality opinion)). Employer argues that this general standard should not be applied in cases where the more specific provisions of the Section 301(a) proviso apply.

Employer quotes the 1993 addition of the phrase "including ... the illegal use of drugs" to the proviso to argue that the Act treats diseases caused by illegal conduct differently from those caused by, for example, the lawful use of tobacco. Nonetheless, Employer also argues that another addition of the 1993 amendments to Section 301(a) is not germane and should not be applied. That addition is: "In cases where the injury or death is caused by intoxication, no compensation shall be paid if the injury or death would not have occurred but for the employe's intoxication, but the burden of proof of such fact shall be upon the employer."

Finally, on the issue of liability, Employer asserts that there is a lack of substantial evidence to support the finding that an occupationally related heart condition was a substantial contributing factor in Decedent's death. Employer notes that its stipulation that Decedent suffered occupational exposure under the terms of Section 108(o) of the Act created only a non-conclusive, i.e. rebuttable, presumption that his coronary disease arose from the employment. It contends that the WCJ mischaracterized Dr. Makous' testimony and asserts that he stated that fire fighters do have a higher incidence of heart disease, citing Dr. Makous' Deposition, N.T., pp. 37–38. Therefore, Employer argues, the WCJ's reason for not accepting Dr. Makous' testimony lacked support, and that testimony was credible and persuasive as a whole.

Further, Employer alleges that Decedent's death was not substantially caused by an occupational disease. In support Employer cites medical testimony describing Decedent's various risk factors including his family history (i.e., the deaths of his father and brother, both fire fighters, from heart attacks at relatively young ages), his high cholesterol levels, his being overweight, his high blood pressure, his smoking and exposure to second-hand smoke and his drug use. Em-

---

4. *Franks* and other cases hold that an employer must prove a violation of law by more than a preponderance of the evidence but not beyond a reasonable doubt and that the employer must prove the causal connection between the violation of law and the injury or death according to this same standard. *See, e.g., Graves v. Workmen's Compensation Appeal Board (Newman),* 668 A.2d 606 (Pa.Cmwlth.1995).

ployer asserts that the record shows that Decedent died from excessive drug use. As support Employer refers to testimony from Dr. Makous and Dr. Hood concerning the high level of cocaine found in Decedent's system,. the effects of cocaine on the body and its capacity to produce cardiac arrhythmia, evidence that Decedent was a chronic drug user in the form of scars on his arms and the fact that his heart was enlarged. Employer contends that there is not substantial evidence to support the WCJ's conclusion that cocaine use was not a substantial factor in Decedent's death and argues that the WCJ erred by turning the rebuttable presumption of causation into an irrebuttable presumption.

First, the Court observes that, contrary to Employer's representations, the WCJ did not mischaracterize Dr. Makous' testimony. Dr. Makous stated: "[F]ire fighting, per say [sic], has not been established with any degree of medical scientific certainty of the degree that these other risk factors I have mentioned as being a basis for coronary disease." Dr. Makous' Deposition, N.T., p. 14. *See also id.* at p. 38. Dr. Makous did not testify that the evidence was sufficient to overcome the statutory presumption; rather, he testified that he disagrees with the presumption. In view of the existence and effectiveness of Section 108(*o* ), however, the WCJ was not free to make a finding or to draw a conclusion that the presumption is invalid.

■ More generally, as Claimant emphasizes, Employer's claims as to the actual cause of Decedent's death constitute nothing more than a request for this Court to make credibility determinations and to reweigh the evidence in favor of Employer. It is axiomatic, however, that the WCJ is the ultimate finder of fact and may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Carpenters' Joint Apprenticeship Committee v. Workmen's Compensation Appeal Board (Wisniewski)*, 654 A.2d 656 (Pa.Cmwlth.1995). In this case, Dr. Shubin testified unequivocally that the primary cause of death was "acute cardiac arrest, secondary to acute myocardial infarction, secondary to arteriosclerotic car-

diovascular disease." Dr. Shubin's Deposition, N.T., p. 36. He stated that this opinion was in agreement with the death certificate prepared by Dr. Hood, which listed the immediate cause of death as arteriosclerotic cardiovascular disease and listed cocaine intoxication under a separate section for other significant conditions contributing to the death but not resulting in the previously identified underlying cause. *Id.* at p. 37. Dr. Shubin's opinion was that the primary risk factor for the development of Decedent's coronary disease was his work as a fire fighter, which involved stress and exposure to multiple chemicals, as well as replacement of some of the oxygen in the air by carbon monoxide. *Id.* at pp. 14–15, 68. There was, in short, substantial evidence to support the WCJ's finding as to the cause of Decedent's death, and Employer's challenge based on asserted lack of substantial evidence must fail.

Employer's other two arguments are interrelated. In essence Employer contends that, under Section 301(a), if an illegal activity played any role at all in an injury or death, then recovery is barred and that the WCJ therefore erred in considering whether a compensable cause was a substantial contributing factor. This position, however, is contrary to the established interpretation of Section 301(a). In *Kovalchick Salvage Co. v. Workmen's Compensation Appeal Board (St. Clair)*, 102 Pa.Cmwlth. 562, 519 A.2d 543 (1986), a crew foreman driving home for the weekend in a company vehicle was killed in a head-on collision. His blood alcohol content was 0.26 percent. Although the Court acknowledged that the decedent's driving in that condition constituted a violation of law, the employer's medical witness stated that he could not say what significance the blood alcohol level had on his death, and the Court concluded that the employer had not met its burden to prove that the illegal activity caused the death.

Similarly, in *Franks*, upon which Employer relies, there was no question that illegal activity was involved. There a SEPTA cashier was arrested for theft, and the referee credited his testimony that the detective injured him in the course of the arrest, although he

did not resist. This Court concluded that the injuries were caused by the arrest, not by the theft, and that the employer therefore had failed to establish a causal connection between the illegal activity and the injuries. The Court determined in *Duquesne Truck Service v. Workmen's Compensation Appeal Board (McKeesport Truck Service)*, 165 Pa. Cmwlth. 145, 644 A.2d 271, *appeal denied*, 539 Pa. 657, 651 A.2d 543 (1994), that recovery was not barred where a truck driver who lacked authority for interstate transportation was killed in an accident in New York. The mere fact of the violation was not sufficient to negate workers' compensation coverage, and the burden was on the employer to prove that the violation caused the death.

In the present case Employer established, and the WCJ found, that Decedent's cocaine use was a contributing factor in his death. Employer did not, however, establish that the illegal activity was the cause of death. As Claimant notes, even Dr. Hood stated:

> We had an abundance of causes of death, and it's really anyone's guess as to which one should be beneath the immediate and which one should be contributing. It could equally—I could equally well have put these around the other way, *because I simply don't know how much time [sic] each played in his death.*

Dr. Hood's Deposition, N.T, p. 43 (emphasis added). The Court agrees that Employer failed to meet its burden to show that a violation of law caused Decedent's death, and because of Employer's failure, the Court is compelled to affirm the order of the Board.[5]

 Finally, the Court turns to Claimant's request for an award for attorney's fees in addition to other costs of litigation pursuant to Pa. R.A.P. 2744, which provides that an appellate court may award as further costs damages as may be just including a reasonable counsel fee "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be awarded is dilatory,

obdurate or vexatious." Claimant cites *Department of Transportation, Bureau of Driver Licensing v. Moran*, 159 Pa.Cmwlth. 655, 634 A.2d 677 (1993), among others, for the definition of a frivolous appeal as one that presents no justiciable question or that is readily recognizable as being devoid of merit in that there is little prospect of success. She notes this Court's recent conclusion that a workers' compensation appeal based only on a challenge to credibility determinations, which are not reversible, constituted a frivolous appeal. *Phillips v. Workmen's Compensation Appeal Board (Century Steel)*, 680 A.2d 45 (Pa.Cmwlth.1996), *appeal granted*, 548 Pa. 641, 694 A.2d 625 (1997). The Court cannot conclude from its evaluation of the record and the arguments presented that this appeal was frivolous within the meaning of Pa. R.A.P. 2744, and it therefore denies Claimant's Rule 2744 request for an award of costs and attorney's fees.

### ORDER

AND NOW, this 22nd day of January, 1998, the order of the Workers' Compensation Appeal Board is affirmed. The request by Maryann Cronin for Pa. R.A.P. 2744 costs and attorney's fees is denied.

---

5. Employer also renews its assertion that, if it is liable, it is entitled to credit for injured-on-duty payments that it made to Decedent, and it requests a remand for a further hearing on this point. As the Board succinctly noted, however, the payments to which Employer refers related to Decedent's periods of disability while he was alive. These payments have no relation to Claimant's fatal claim petition seeking benefits based upon the death of her husband.