**Robert BREHM, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (Hygienic Sanitation Co. and Zurich Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 6, 2000.
Decided Aug. 17, 2001.
Reargument and Reconsideration
Denied Oct. 17, 2001.

Samuel A. Litzenberger, Quakertown, for petitioner.

Raymond F. Keisling, Carnegie, for respondents.

Before DOYLE, President Judge, COLINS, McGINLEY, PELLEGRINI, FRIEDMAN, FLAHERTY, LEADBETTER, Judges.

DOYLE President Judge.

Robert Brehm (Claimant) petitions for review of a January 25, 2000 order of the Workers' Compensation Appeal Board (Board), which affirmed a decision by a workers' compensation judge (WCJ) to suspend Claimant's workers' compensation benefits as of January 1, 1996, and remanded the case to the WCJ for a recalculation of Claimant's average weekly wage. We affirm.

On September 10, 1990, while working for Hygienic Sanitation Co., (Employer),[1] Claimant sustained a work injury, in a motor vehicle accident while on company business, in the nature of a "cervical and back strain." Employer subsequently entered into a notice of compensation payable (NCP) with Claimant, pursuant to which claimant received $419 per week in workers' compensation benefits for total disability based on an average weekly wage of $1,200. Claimant testified that, at the time of the injury, he was a Vice President and "over-all manager of operations" for Hygienic with a 25% ownership interest in the business.

On June 24, 1996, Employer filed a petition to modify/review Claimant's compensation benefits alleging that, as of January 1, 1996, Claimant was no longer entitled to total disability benefits.[2] Employer included a request for a supersedeas and, on

---

1. Hygienic Sanitation Co., of which Claimant was part owner, was insured by Zurich Insurance Co. for workers' compensation purposes. Zurich is the entity pursuing the resolution of this proceeding and, as such, is technically termed the "Employer" for purposes of this opinion.

2. The petition filed by Employer indicates that it was a petition to "Modify Compensa-

August 29, 1996, the WCJ held a supersedeas hearing.[3] On September 12, 1996, the WCJ granted Employer's request for a supersedeas.[4] On November 4, 1996, Claimant filed a motion to vacate the WCJ's supersedeas order,[5] which the WCJ denied on January 29, 1997.[6]

On February 3, 1997, Employer filed a second petition to review compensation benefits, alleging that claimant's average weekly wage on the NCP was improperly calculated.[7] Claimant filed an answer denying the allegation, and a hearing was held before the WCJ. Testimony was taken at that time and the "record was closed on all petitions."

At the hearing, claimant acknowledged that: (1) in 1994, Claimant received $28,869.84 in W–2 wages from B & G Equipment Company (B & G);[8] (2) in

tion Benefits (Reduce/increase amount of workers' compensation checks)" and "Review Compensation Benefits (Ask Judge to review agreement/notice for mistake)." (Original Record, Employer's Petition filed June 24, 1996.)

3. At the hearing, Employer indicated that an investigation had revealed that Claimant was earning wages, and had been earning wages for several years, from the B & G Equipment Company without reporting them to Employer. If Claimant's average weekly wage of $1,200 is correct and if Claimant had no wages other than those discovered by Employer's investigator, then Claimant would still be entitled to $419 per week in compensation. However, Claimant's ability to earn wages would put him "in a partial disability status," so that Claimant would be entitled to receive only 500 weeks of compensation. The WCJ asked Claimant whether he had received the money shown on the investigator's June 5, 1996 report, **but counsel for Claimant instructed Claimant not to answer the question.** The WCJ then closed the record.

4. The WCJ issued an interlocutory order, wherein the WCJ explained that he was granting the supersedeas because Claimant refused to answer the WCJ's questions at the supersedeas hearing. (WCJ's 9/12/96 decision, para. 12.)

5. In this motion to vacate, Claimant pointed out that Employer only sought to limit Claimant's benefits to 500 weeks; therefore, a supersedeas was not appropriate. Claimant also asserted that, because Employer had the burden of proof at the supersedeas hearing, Claimant did not have to testify. Claimant argued, therefore, that the WCJ demonstrated "obvious prejudice" in granting the supersedeas simply because Claimant would not answer the WCJ's questions on the advice of counsel. As a result, Claimant requested that the case be assigned to another WCJ. (*See* Motion to Vacate.)

6. At a hearing held on January 28, 1997, Claimant withdrew his request that the case be assigned to another WCJ. Moreover, Claimant was prepared to testify at the hearing that he did nothing to earn the money he received from B & G Equipment Company, that he owned 25% of that company and that the money represented stock dividends. Rather than have Claimant actually testify to these matters, Employer stipulated that Claimant would have given such testimony.

7. While the petition was filed with the Department of Labor & Industry on February 3, 1997, it was served on Claimant on January 30, 1997. In the petition, Employer pointed out that claimant's total annual income from September 10, 1989 to September 10, 1990 (Claimant's benefit year), was $35,340; however, Claimant received $15,600 of that amount for the quarter, which was used to compute Claimant's average weekly wage (AWW) (from June 10, 1990 to September 10, 1990). (*See* Section 309 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582.) Employer posited that, because Claimant asserted that much of his *post*-injury income was from dividends, much of Claimant's *pre*-injury income during the period used to determine his AWW could likewise have been dividends, not wages.

8. Claimant testified that he was on the Board of Directors of B & G, that he was Vice President of the company and that he was a shareholder in the company. (WCJ's Findings of Fact, No. 14.)

1995, Claimant received $24,317.28 in W–2 wages from B & G; (3) in September 1996, Claimant received from Employer a verification of employment form,[9] **and Claimant indicated on the form that he was not employed or self-employed;** and (4) in 1996, claimant received $2,338.20 in W–2 wages from B & G. However, Claimant testified that, despite the fact that Claimant's 1996 W–2 form showed wages from B & G, it was actually "dividend income."[10] When Employer asked Claimant to provide copies of, or authorize the release of, his income tax records, Claimant refused to do so.

The WCJ did not believe that Claimant received only dividend income from B & G in 1996. The WCJ found that Claimant

knowingly received total disability benefits from 1994 through 1996 and that, during that term, he was employed and receiving wages in excess of $20,000.[11] The WCJ also inferred from Claimant's unjustified refusal to provide copies of, or authorize the release of, his most recent income tax returns that, "at the present time," Claimant has wages "in excess of that which appears in the record."[12] The WCJ then suspended Claimant's compensation as of January 1, 1996.[13] The WCJ also technically denied Employer's second petition to review the calculation of Claimant's average weekly wage because Employer presented no evidence in support of the petition.

9. Section 311.1(d) of the Act, 77 P.S. § 631.1(d), which was added by Section 6 of the Act of June 24, 1996, P.L. 350 (Act 57), states that an insurer may submit a verification form to an employee requesting verification "that the employe's status regarding the entitlement to receive compensation has not changed and a notation of any changes of which the employe is aware at the time the employe completes the verification...."

10. Regardless of the rationale proffered by Claimant that this money constituted dividends and not wages, issuance of a W 2 by a corporation is presumptively for wages. Section 6051(a) of the Internal Revenue Code, 26 U.S.C. § 6051(a).

11. The WCJ found that Claimant received wages in excess of $20,000 in 1996 despite the lesser amount of $2,338.20 showing on Claimant's 1996 W–2 form. (WCJ's Finding of Fact, No. 16(g).) The WCJ inferred that claimant was removed from B & G's payroll, but still received earned income, when Claimant "somehow became alerted to the fact that [Employer] became aware of claimant's association with B & G...." (WCJ's Findings of Fact, No. 16(h).)

12. Because the WCJ ultimately suspended Claimant's compensation, the WCJ evidently found that Claimant was earning "in excess of" his pre-injury wages.

13. We note that the WCJ also found that Claimant violated Sections 1102(10) and 1102(11) of the Act, 77 P.S. §§ 1039.2(10) and 1039.2(11), which were added by Section 20 of the Act of July 2, 1993, P.L. 190 (Act 44), and which were then amended by Act 57. *See* Section 1105(a) of the Act, 77 P.S. § 1039.5, which was added by Section 20 of Act 44, and which states that violations of Section 1102 are third degree felonies and could result in a fine of $50,000 and seven years imprisonment.

Section 1102(10) of the Act provides that a person commits an offense if the person "[k]nowingly and with intent to defraud, fails to make the report required under Section 311.1" of the Act. Section 311.1 of the Act, which did not take effect until August 1996, requires that an employee make a report when the employee has become employed or self-employed in any capacity. Section 1102(11) of the Act provides that a person commits an offense if the person "[k]nowingly and with intent to defraud, receives total disability benefits .... while employed or receiving wages."

Although Claimant admitted receiving total disability benefits while employed in 1994 and 1995, the question of whether Claimant intended to defraud Employer was not a matter that was properly before the WCJ. Employer sought only a modification of benefits as of January 1, 1996, and review of Claimant's average weekly wage.

Both Claimant and Employer filed appeals with the Board. The Board affirmed the WCJ's suspension of compensation, but the Board reversed the WCJ's denial of Employer's petition to review Claimant's average weekly wage. Although the WCJ found that Employer presented no evidence on the matter, the Board pointed to Claimant's own testimony that, at the time of his work injury, he was receiving a salary plus a bonus. The Board agreed with Employer that the bonus should have been prorated over the entire year; thus, the Board remanded the case to the WCJ for a recalculation of Claimant's average weekly wage.

█ On appeal to this court,[14] Claimant presents nine issues for our review.[15] These issues may be distilled into challenges to the WCJ's decision, affirmed by the Board, on the basis that: (1) Claimant was not put on notice that his income would be questioned; (2) the Board erred in remanding the case to the WCJ for a recalculation of Claimant's average weekly wage; (3) the WCJ erred in suspending Claimant's compensation as of January 1, 1996 for refusing to produce his federal income tax returns; and (4) Employer had stipulated to Claimant's average weekly wage as well as a conversion of benefits to partial disability. More particularly, Claimant contends that Employer only sought a modification of his compensation from total to partial disability and that he had neither a duty to testify nor a burden of production in this matter.

Our starting point in this matter is Employer's petition to modify/review benefits. Claimant argues that Employer's petition only alleged that "Claimant is not entitled to total disability at this time," and that such a statement cannot form the basis for the WCJ's order suspending Claimant's benefits. Essentially, Claimant is arguing that the WCJ may only grant the explicit relief requested by Employer, and none other.

█ This Court has consistently maintained that the rules governing pleadings in workers' compensation cases do not mirror the Pennsylvania Rules of Civil Procedure and should be liberally construed. *Liberty Baking Co. v. Workmen's Compensation Appeal Board,* 63 Pa.Cmwlth. 517, 439 A.2d 1276 (1981). Furthermore, we have never required absolute and unreasonable strictness of pleadings in workers' compensation cases, *Dunmore School District v. Workmen's Compensation Appeal Board (Lorusso),* 89 Pa.Cmwlth.368, 492 A.2d 773 (1985), and, if one party effectively puts the adverse party on notice as to the theory of relief which is sought, the WCJ will be authorized to grant the

---

**14.** Our standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 684 A.2d 673 (Pa.Cmwlth.1996).

**15.** We note that Claimant's brief presents his Statement of Questions Involved on two pages. Pursuant to Rule 2116(a) of the Pennsylvania Rules of Appellate Procedure, the Statement of Questions Involved must never

exceed one page. Pa. R.A.P. 2116(a). In addition, we note that Claimant failed to raise issues 1–4 before the Board, and failed to include them in his Petition for Review to this Court. Therefore, those issues are waived. *Jackson v. Indiana University of Pennsylvania,* 695 A.2d 980 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 555 Pa. 692, 722 A.2d 1058 (1998). We further note that addressing the remaining issues is difficult because Claimant expends much of his argument on the issues that he waived, while articulating little on some of those that he preserved.

relief requested.[16] *Bell Telephone Co. of PA. v. Workmen's Compensation Appeal Board (Rothenbach)*, 98 Pa.Cmwlth.332, 511 A.2d 261 (1986).[17] Moreover, in *Bell Telephone* we reviewed the statutory language of Section 413 of the Act, 77 P.S. § 772, as it then existed, and we stated:

> We construe the . . . statutory language to allow a [WCJ] to take the appropriate action as indicated by the evidence upon the filing of any petition referenced therein by **either party**. . . . 'This rule applies equally to pleadings by the claimant and the employer.'

*Bell Telephone*, 511 A.2d at 262–63 (citation omitted) (emphasis added). We went on to say that: "We disagree with the Board that [prior case law] prevents a [WCJ], on an appropriate petition, after a full and fair hearing at which a relevant record is developed, from modifying, reinstating, suspending or terminating a notice of compensation payable **regardless of which party filed the petition** instituting the proceedings." *Id.* at 263 (emphasis added).

■ While Employer had initially requested only a modification/review, it later filed a petition to reflect the substance of the hearings. At the hearing on August 29, 1996, Employer indicated that it had acquired information that Claimant had been collecting wages during 1994, 1995 and 1996. Both Claimant and his counsel were present, and in fact, Claimant was questioned on this very matter by the WCJ.[18] Counsel advised Claimant not to answer any questions concerning years prior to 1996, but the significant import here is that Claimant was put on notice that he was going to have to account for this income. In actuality, Claimant did defend this issue throughout the hearing process by consistently refusing to produce his tax returns for the years at issue. In addition, Employer filed its petition to review the computation of the average weekly wage prior to the final hearing and the record in this case was closed some seven months after the issues concerning Claimant's additional income were raised. Our review of the record, therefore, convinces us that Claimant was clearly put on notice that his benefits could be suspended.

In *Sun Oil Co. v. Workmen's Compensation Appeal Board (Thompson)*, 158 Pa. Cmwlth.434, 631 A.2d 1084 (1993), we had occasion to review a similar set of circumstances. The claimant there presented tax returns for six years and employment records for two years out of an eleven-year

---

**16.** We are cognizant that the latitude afforded to claimants in their petition for review, as indicated in *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Cmwlth.455, 576 A.2d 1163 (1990), *superceded on other grounds by statute*, is more restricted when applied to employers. However, that does not negate the fact that a WCJ is empowered under the Act to take appropriate action based upon the evidence presented and that Claimant can be placed on notice of the relief sought during the proceedings.

**17.** *See also, Hutter v. Workmen's Compensation Appeal Board (Pittsburgh Aluminum Co.)*, 665 A.2d 554 (Pa.Cmwlth.1995); *Yezovich v. Workmen's Compensation Appeal Board (USX Corp.)*, 144 Pa.Cmwlth.601, 601 A.2d 1341 (1992); *Mardis v. Workmen's Compensation Appeal Board (Malsbary Mfg. Co.)*, 145 Pa. Cmwlth.394, 603 A.2d 672 (1992); and *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

**18.** The relevant colloquy went as follows:

Judge: At any time since your work injury in this case, up to the present time, have you had any income from any work that you performed?
Claimant: **I've had income.**
(Notes of Testimony, August 29, 1996, p. 25.)
(Emphasis added.)

period. She produced neither tax returns nor employment records for three of the years at issue, testifying that she had no taxable income for those years and, for that reason, did not file tax returns in those years. The referee found her testimony on this point to be credible and we were obliged to accept the referee's finding of fact as conclusive. The concurrence/dissent pointed out, however, that the claimant did not testify that she had no income during those years, only that she had "no 'appreciable income.'" *Id.* at 1090. The concurrence/dissent there also remarked that the claimant's "self-serving statements that she had no 'taxable or appreciable income' during 1984, 1985 and 1986 as a reason for not having filed income tax returns for those periods does not constitute evidence of record from which the referee could find that she had 'no income' during those years." *Id.* (Footnote omitted.) In the instant matter, contrary to the findings on credibility in *Sun Oil Co.,* the WCJ found Claimant's testimony **not credible** and Claimant's excuse that his tax returns could not be produced because of his impending divorce is no excuse to lessen this Claimant's burden of proof in this matter.[19]

The Superior Court looked at the failure to produce tax returns in *Davis v. Welsbach Corp.,* 201 Pa.Super. 520, 193 A.2d 621 (1963). Claimants in that case were the parents of a deceased Welsbach employee who claimed partial dependency on their adult son. The court noted that the income tax returns of the father and son were sought by the other side, but they were never produced. The court concluded that, had they been produced, they might have supported the dependency claim of the parents. Here, Employer clearly demonstrated by the production of Claimant's W–2s from B & G Equipment that he *had* income not reported to Employer.[20] Claimant also admitted receiving "income" from up to *four* business ventures[21] since his injury date. Employer attempted to subpoena Claimant's tax returns, but the Internal Revenue Service thwarted that attempt, and would not release the records absent Claimant's consent, which was not forthcoming.

Regarding the Board's remand for recalculation of the average weekly wage, Claimant, himself, testified that his income comprised both salary and bonus. He was employed in a family business, may have

**19.** We note that, while there is a paucity of case law concerning the effect of a refusal to produce federal income tax returns, federal jurisdictions have concluded that failure to produce requisite financial information will produce similar consequences. *See, e.g., United States v. Sasso,* 59 F.3d 341 (2d Cir. 1995) (holding that the district court was entitled to reject a claim of indigency when the defendant refused to cooperate with the Probation Department in exploring his financial resources); *United States v. Fields,* 113 F.3d 313 (2d Cir.1997). We also note that an interim order in Claimant's divorce action was filed on March 21, 1997, just days after the March 6, 1997 workers' compensation hearing, by which time it appears that Claimant had produced his 1996 tax return for that tribunal. *Bianco Brehm v. Brehm,* 718 A.2d 852, No. 4203 Philadelphia 1997 (Pa.Su-

per.1997), filed May 11, 1998, unpublished opinion, p. 4.

**20.** Claimant speciously argues that, because he produced the W–2s from B & G, Employer does not need his tax returns. We observe the obvious, that Claimant's income tax returns would have shown whether these were the **only** W–2s Claimant received in that year.

**21.** They were PDQ, Hyco Liquidation, B & G Equipment and Endless Mountain Logging. We observe also that in Claimant's appeal in his divorce action, the Superior Court noted that Claimant was "self-employed and jointly owns several small enterprises with two brothers [and] receives approximately $912.00 per week in *net* income." *Bianco Brehm v. Brehm,* p. 1. (Emphasis added.)

submitted the claim himself as alluded to by Employer, and failed to notify Employer that a portion of his 1990 remuneration consisted of an annual bonus. Claimant also testified that the bonus was paid when the company had the money, not at a specified time.

■ Under Section 413 of the Act,[22] the WCJ is empowered to modify the average weekly wage where it "was in any material respect incorrect." In *Kiebler v. Workers' Compensation Appeal Board (Specialty Tire of America)*, 738 A.2d 510 (Pa. Cmwlth.1999), relying on *Lane Enterprises, Inc. v. Workmen's Compensation Appeal Board (Patton)*, 537 Pa. 426, 644 A.2d 726 (1994), an employer petitioned for review of the claimant's average weekly wage contending that the claimant was being overpaid because it had made a miscalculation. In that case the claimant had been paid a yearly bonus of $1,600 in the fourth quarter of the year, which quarter was used to calculate the claimant's average weekly wage. The WCJ found that the bonus had to be prorated over the entire year. Both the Board and this Court affirmed. In the instant matter,

Employer initially was unaware that the period used to compute Claimant's average weekly wage could have contained the payment of his annual bonus, either in whole or in part, at the time the average weekly wage was calculated.[23]

■ The clear purpose of Section 413 is to give WCJs the power to update, correct and resolve errors and mistakes in workers' compensation claims, which pertain to either party involved in a case. In the instant matter, both Employer and the WCJ were hampered at every turn by an uncooperative claimant. Claimant refused to produce his federal income tax returns or release them to Employer and to the WCJ.[24] In addition, Claimant's responses, when queried about his former company's bonus program, were non-specific and equally uncooperative. Claimant had sole possession, therefore, by control or influence in the family corporation, of the evidence that Employer needed to fulfill its burden. We feel that the instant matter is analogous to the Claimant who refuses to undergo a scheduled physical examination or a claimant who refuses to complete and

---

22. Section 413(a), 77 P.S. § 771, states:

> A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, **or in the course of the proceedings under any petition pending before such workers' compensation judge,** if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.
> (Emphasis added.)

23. Claimant testified that he was paid a salary and a bonus. Experience shows that salary payments are generally for a fixed amount, paid in identical increments over the entire year. In Claimant's case, he was paid varying amounts during each quarter, which could reflect the partial payment of the bonus over the year. Remand is obviously neces-

sary to ascertain what his compensation really comprised, and recalculation, if necessary, of Claimant's average weekly wage. Employer's position has been hindered because Claimant's employer is a family-owned business, which has ceased operations, and Claimant has been uncooperative.

24. Claimant argues that he had no burden of proof in this matter, but Claimant is mistaken. Under Section 311.1 of the Act, 77 P.S. § 631.1, the burden is on Claimant to report wage and employment information to an insurer, and that section specifically places the burden on the claimant "to cooperate with the insurer in an investigation of employment, self-employment, wages and physical condition." 77 P.S. § 631.1(c). The section also requires that Claimant provide "[a]ny other information which is relevant in determining the entitlement to or amount of compensation." 77 P.S. § 631.1(a)(7).

return a verification form. Under those circumstances, we have held that a WCJ may properly suspend a claimant's benefits. So also we hold that a claimant who refuses to provide the financial information necessary to make a proper determination of his average weekly wage or information that is necessary to ascertain whether the claimant is working, may have workers' compensation benefits suspended until such information is provided and such a determination can be made.

Finally, Claimant contends that Employer "stipulated" to an original wage of $1,200 and to continuing total disability from work-related injuries, rendering the WCJ's suspension of Claimant's benefits erroneous. (Claimant's brief, p. 4.) A thorough review of the transcript, however, reveals that there was no "stipulation" by Employer as to these items, only discussions. Claimant also avers that Employer "stipulated" at the initial hearing that the best it could hope to achieve would be a conversion from total disability to partial disability. However, Employer's statements never approached the level of a "stipulation" and merely reflected Employer's assessment based on the information available to it at the time. *See, e.g., Norris v. Workers' Compensation Appeal Board (Hahnemann Hospital),* 726 A.2d 1 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 560 Pa. 714, 743 A.2d 925 (1999). This information, of course, did not include Claimant's admission that he had earned income in the years in question. We thus find this argument to be without merit.

Accordingly, we affirm the order of the Board.

### ORDER

**NOW,** August 17, 2001, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

FRIEDMAN, Judge, Dissenting.

I respectfully dissent. The majority holds that, although the employer in this case filed a *modification* petition, the employer put Robert Brehm (Claimant) on notice that it was seeking a *suspension* of benefits; thus, the Workers' Compensation Appeal Board (WCAB) properly affirmed the suspension of Claimant's benefits by a workers' compensation judge (WCJ). The majority also holds that the WCAB properly remanded this case to the WCJ for recalculation of Claimant's average weekly wage. For the reasons that follow, I cannot agree with the majority on these issues. Unlike the majority, I would reverse the WCAB.

### I. Modification Petition

Claimant contends that the employer's modification petition sought only to put Claimant on partial disability status as of January 1, 1996, thereby limiting the employer's liability to 500 weeks of benefits. A WCJ has authority to grant relief that an employer does not request in a modification petition,[1] *but only if* the employer puts the claimant on notice that it is seeking such relief and the claimant has an opportunity to defend against it. *Foyle v. Workmen's Compensation Appeal Board (Liquid Carbonic I/M Corp.),* 160 Pa. Cmwlth.534, 635 A.2d 687 (Pa.Cmwlth. 1993), *appeal denied,* 538 Pa. 660, 648 A.2d 791 (1994).

Here, the employer alleged in its modification petition that Claimant was no longer entitled to total disability benefits. The employer explained at the first hearing that it filed the petition because it

---

1. (*See* majority op. at 1081 – 1082.)

believed that Claimant was working and, therefore, was entitled only to 500 weeks of partial disability benefits. (O.R., 8/29/96 hearing, N.T. at 9–10.) At the *final hearing* in this case, the employer agreed with the WCJ that the *only issue* to be decided was whether Claimant had earnings to support the *modification* of his compensation. (O.R., 3/6/97 hearing, N.T. at 4.) Because Claimant did not have notice that the employer was seeking a suspension and because Claimant did not have an opportunity to defend against a suspension,[2] I believe that the WCJ erred in granting a suspension here. The WCJ was empowered only to grant a modification as of January 1, 1996 and to limit the payment of Claimant's benefits to 500 weeks.

The majority's contrary position is that the employer "clearly" put Claimant on notice that it was seeking a suspension because "the WCJ" questioned Claimant about having income since his injury. (Majority op. at 1082.) First, I fail to see how the *WCJ* can put a claimant on notice that an *employer* is seeking greater relief than the employer requested in its petition. Second, the question that the WCJ asked was precisely the question before the WCJ on the *modification* petition, i.e., whether Claimant had income after becoming disabled. If Claimant had earnings that did not equal his pre-injury wages, then the employer was entitled to a *modification* of Claimant's benefits.

The employer never considered the possibility of a suspension of benefits, or even a modification of Claimant's benefit rate, because Claimant's average weekly wage was so high. (*See* O.R., 8/29/96 hearing, N.T. at 7.) With an average weekly wage of $1,200.00, representing an annual income of $62,400.00 per year, Claimant could have earned almost $30,000.00 per year while disabled, and he still would have been entitled to the maximum benefit rate of $419.00 per week. Consider, for instance, Claimant's earnings of $28,869.84 in 1994.[3] To determine partial disability benefits, we calculate two-thirds of the difference between the employee's average weekly wage and the earning power of the disabled employee. *See* section 306(b) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512. In 1994, the difference between Claimant's $1,200.00 average weekly wage and his $555.19[4] per week earning power was $644.81. Two-thirds of that difference is $429.87, which exceeds the maximum benefit rate of $419.00. Thus, the employer did not have sufficient evidence to support even a decrease in Claimant's benefits. Knowing this, Claimant certainly could not have imagined that the employer was seeking a suspension of benefits.

To justify a suspension of Claimant's benefits, the employer needed evidence showing that Claimant was earning at least $62,400.00 per year. The employer

---

**2.** During the final seconds of the last hearing, just before the WCJ closed the record, the employer asked permission to amend its modification petition to indicate that Claimant "admitted income from 1991 up until 1996, even though we don't know the full extent of it because they won't cooperate." (O.R., 3/6/97 hearing, N.T. at 71–72.) The WCJ allowed the amendment over Claimant's objection. *Id.* Although the amendment lacks clarity, to the extent that the amendment suggests

the possibility of a suspension, I point out that, under the circumstances, Claimant had no opportunity to prepare and offer a defense.

**3.** The employer presented no evidence that Claimant ever earned more than this amount in any one year since his injury.

**4.** Claimant's annual earnings of $28,869.87 divided by fifty-two weeks in a year gives a result of $555.19.

had no such evidence. Because the math was clear, I am unable to understand the majority's view that the employer "clearly" put Claimant on notice that it was seeking a suspension. That simply cannot be when the employer had no evidence to justify a suspension. This is a case where the parties could figure out by doing the math whether there could be a suspension, and the employer "clearly" had no basis for seeking a suspension here.

Moreover, the WCJ made *no* finding of fact to justify a suspension of benefits as of January 1, 1996. The WCJ found only that Claimant's earnings in 1996 were in excess of $20,000.00. (WCJ's Findings of Fact, Nos. 16(g), 16(h).) As indicated above, the WCJ had to find that Claimant's earnings in 1996 were equal to his pre-injury wages of $62,400.00 per year. The WCJ's indefinite finding that Claimant earned in excess of $20,000.00 does not support a suspension of benefits. The WCJ appears to justify the suspension based on a finding that Claimant violated sections 1102(10) and 1102(11) of the Act, 77 P.S. §§ 1039.2(10) and 1039.2(11), provisions which relate to insurance fraud. However, the Act does not give a WCJ jurisdiction over criminal matters to make findings of criminal wrongdoing and to suspend benefits based thereon.[5]

Certainly, Claimant could not have anticipated that the majority of this court was going to authorize the suspension of benefits where a claimant does not provide income tax returns in a modification proceeding. In fairness to Claimant, the majority should not retroactively apply its holding, especially when the question before us is whether Claimant was put on notice that there could be a suspension of benefits in this case. Because I believe that Claimant did not have notice that the employer was seeking a suspension of benefits, I would reverse.

## II. Review Petition

As for the review petition, the majority affirmed that portion of the WCAB's order remanding this case for a recalculation of Claimant's average weekly wage. The WCAB directed that the WCJ should allocate Claimant's bonus in accordance with *Lane Enterprises, Inc. v. Workmen's Compensation Appeal Board (Patton)*, 537 Pa. 426, 644 A.2d 726 (1994). Given the record and the findings of fact in this case, I do not believe this is legally permissible.

In *Lane Enterprises, Inc.*, our supreme court held that a bonus calculated on the basis of yearly performance must be prorated over the whole year. However, the record before us contains *no* evidence that Claimant's bonus was calculated on the basis of yearly performance. Moreover, the WCJ found as a fact that the employer submitted "no evidence" indicating that Claimant's average weekly wage was anything other than $1,200.00 as of the date of Claimant's injury. (WCJ's Findings of Fact, No. 17.) Thus, it would be legally improper for the WCJ to recalculate Claimant's average weekly wage by allocating Claimant's bonus over the course of a year.

The majority suggests that the employer should have another chance to meet its burden of proof on the review petition because Claimant was not cooperative in providing evidence about his bonus. (Majority op. at 1084.) However, the WCAB remands for a recalculation of Claimant's average weekly wage, *not* for the taking of

---

**5.** *See* section 1105(a) of the Act, 77 P.S. § 1039.5(a) (stating that a person who violates section 1102 is guilty of a felony of the third degree), and section 1109 of the Act, 77 P.S. § 1039.9 (stating that the District Attorney and Attorney General may institute criminal proceedings for a violation of section 1102).

additional evidence about the bonus. Because the existing record and the findings do not support a recalculation of the average weekly wage by allocating Claimant's bonus over a year, I would reverse the WCAB's remand order.