# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pioneer Drilling, : 
                  Petitioner : 
                          : 
           v. : No. 792 C.D. 2015
                          : Submitted: October 23, 2015
Workers' Compensation Appeal : 
Board (Crowley), : 
               Respondent : 

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**             **FILED: December 17, 2015**

In this appeal, Pioneer Drilling (Employer) asks whether the Workers' Compensation Appeal Board (Board) erred in reversing a Workers' Compensation Judge's (WCJ) decision that denied and dismissed Kyle Crowley's (Claimant) claim petition. Employer asserts substantial evidence supports the WCJ's determination that Employer justifiably terminated Claimant for misconduct because he violated Employer's safety policy, not because of the work injury. In addition, Employer claims the Board erred by reversing the WCJ's determination that Claimant forfeited benefits as a result of his failure to timely comply with discovery requests. Upon review, we affirm the Board's determination, but we remand for further proceedings.

## I. Background

Claimant filed a claim petition against Employer, alleging he suffered an injury to his cervical and lumbar spine in the course and scope of his duties working on a drilling rig. Employer denied the material averments. Hearings before a WCJ ensued.

At the hearing, Claimant testified he was injured on the job on September 1, 2011, when a piece of pipe came down on top of him and compressed his spine. At the time of the injury, he was in a squatting position. The next day, he went to the hospital and underwent an x-ray. The hospital staff advised him to obtain an MRI, which Employer refused. Afterwards, Employer helped him pack his bags, took him to the airport, and fired him. Shortly thereafter, Claimant underwent an MRI, which revealed two herniated discs and a disc bulge. He moved to Colorado and treated with Peggy Wrich, D.O. (Claimant's Physician), who prescribed pain medication and physical therapy. Claimant does not believe he is capable of returning to work based on his back pain, inability to sit or stand for long periods of time, and difficulty sleeping.

On cross-examination, Claimant testified he did not recall being reprimanded in February 2011, but he acknowledged he received a reprimand letter, which Employer offered as Exhibit No. 2. Claimant also admitted he received unemployment compensation for eight months, approximating $900 a month, from Colorado compensation authorities. WCJ's Op., 3/5/14, Finding of Fact (F.F.) No. 11; WCJ's Hr'g, Notes of Testimony (N.T.), 11/13/12, at 54. Based on this admission, the WCJ directed Claimant and his attorney to provide

2

documentation showing the amount of unemployment compensation benefits he received. F.F. No. 11; N.T., 11/13/12, at 55-56.

Claimant also presented the deposition of his Physician, who is board-certified in family medicine. Claimant's Physician testified she took a history of the work injury, examined Claimant, and reviewed his medical records. She diagnosed a herniated lumbar disc and neck pain, as well as depression and anxiety related to his medical condition. She relied on an MRI performed on September 6, 2011, which revealed a central disc herniation at the L4-5 and L5-S1 levels causing mild spinal stenosis and probable L5 and S1 nerve root impingement. She acknowledged a 2008 MRI showed a minimal broad-based extrusion at L5-S1, but opined his current injury was different. Claimant's Physician prescribed medication and physical therapy, and she referred him to a neurosurgeon. She imposed a restriction of not lifting more than 5 to 10 pounds. She opined the injury was likely caused by work. She further opined Claimant would not be able to return to his pre-injury job because of the work injury and restrictions imposed.

In opposition, Employer presented the deposition testimony of Michael Coonce, its Safety Supervisor (Supervisor). Supervisor testified his position entailed making sure Employer's safety policies and procedures were followed. He explained the nature of Claimant's job was to "trip in and trip out pipe settings, consisting of doing regular maintenance work around the rig, putting parts back together and things of that nature." F.F. No. 8.

Supervisor recounted the incident leading to the reprimand in February 2011. Claimant was removing casing pipe and putting it on pipe rakes about 30 feet in length. Claimant was on the ground, while another employee operated the forklift. Claimant put himself in the danger zone when the casing pipe rolled onto him. He was taken to the hospital. Employer issued written reprimands to Claimant and the forklift operator "for not operating and working safely." F.F. No. 15.

As for the injury occurring on September 1, 2011, Supervisor testified, "it was his understanding that Claimant was setting slips when he went to stand back up and hit the top of his hardhat on the bottom of the top drive. The truck drive was in the normal position and the procedure they were performing was just like any other day." F.F. No. 16. Employer issued Claimant another written reprimand and terminated him the next day. According to Supervisor, it was ordinary practice for Employer to terminate an employee who had two accidents within a seven to nine month timeframe.

Employer also presented the deposition testimony of John Kline, Jr., M.D. (Employer's Physician), who is board-certified in physical medicine and rehabilitation. Employer's Physician testified he examined Claimant in August 2013, took a history from him, and reviewed his medical records. He testified the x-ray report performed the day after the incident was normal and the MRI evaluation performed days later showed a central disc herniation at L4-5 and L5-S1. However, review of a 2008 MRI report revealed a pre-existing L5-S1 disc extrusion. Employer's Physician diagnosed "a broad based L4-5 disc bulge with

4

central herniation, slightly paracentral to the left," attributable to the work incident of September 1, 2011, and an L5-S1 disc extrusion or herniation unrelated to the work incident. F.F. No. 17. He opined Claimant is capable of performing medium-duty work, with lifting or carrying up to 50 pounds, but he should avoid repetitive bending or twisting of the back.

Ultimately, the WCJ credited the testimony of Employer's Physician over the testimony of Claimant's Physician. The WCJ also credited the testimony of Supervisor, which was uncontradicted. Based on the credited medical evidence, the WCJ concluded Claimant sustained a work-related herniated disc at the L4-5 level, but he did not sustain or aggravate a previous L5-S1 disc herniation.

Notwithstanding the fact that Claimant met his burden of proving a work injury, the WCJ determined Claimant was not entitled to workers' compensation benefits for two reasons. First, the WCJ found Claimant was terminated for cause on September 2, 2011, for violating Employer's safety procedures twice within a nine-month timeframe. Thus, Claimant's loss of earnings was attributable to his own misconduct, not the work injury.

Second, the WCJ found Claimant failed to timely comply with discovery requests. F.F. No. 21. At the hearing in November 2012, the WCJ requested Claimant provide documentation showing the amount of unemployment compensation benefits he received and was entitled to receive in the future. F.F. No. 20. Employer also requested Claimant's compliance with subpoenas for income tax records for 2011 and 2012 on or before December 5, 2013. F.F. No.

5

21. However, the WCJ found Claimant did not provide this documentation in a timely manner. This information was necessary to determine whether Employer was entitled to a possible credit for unemployment compensation benefits that Claimant received after the injury. Employer submitted the documentation in February 2014, after the close of the record, which the WCJ admitted. F.F. No. 22. Notwithstanding, the WCJ determined Claimant forfeited his right to benefits based on his late compliance. F.F. Nos. 21. Thus, the WCJ denied and dismissed Claimant's claim petition.

Claimant appealed to the Board, which reversed in part and affirmed in part. The Board determined the WCJ erred in finding Claimant was terminated for cause. According to Supervisor's testimony, Employer terminated Claimant based on Claimant's own negligence when he sustained his work injury. Relying on Eat'n Park Restaurants v. Workers' Compensation Appeal Board (Skinner-Ford), 737 A.2d 359 (Pa. Cmwlth. 1999), the Board explained an employer cannot terminate an employee because of his work injury.

In addition, the Board determined the WCJ erred in finding Claimant forfeited his right to wage loss benefits because he did not timely comply with discovery demands. Although Claimant submitted his unemployment compensation and income tax documentation late, after the record closed, the documentation was eventually entered into the record and received before the WCJ rendered his decision. Thus, the Board awarded disability and medical benefits from the date of injury and ongoing. From this decision, Employer filed a petition for review in this Court.

6

## II. Issues

On appeal,[1] Employer contends the Board misapplied Eat-n-Park because that case was decided in the context of a reinstatement of benefits following a suspension. Further, Claimant was not terminated for sustaining a work injury. Rather, the WCJ found Claimant was justifiably terminated for cause because of his own misconduct of violating Employer's safety procedures twice within a nine-month timeframe. The WCJ's findings in this regard are based on substantial competent evidence, and they are conclusive on appeal. In addition, Employer asserts the Board erred in reversing the WCJ's determination that Claimant forfeited benefits by not timely complying with discovery demands.

## III. Discussion

### A. Eat'n Park

First, Employer contends the Board misapplied Eat'n Park. Eat'n Park holds that an employer may not terminate a claimant for sustaining a work injury. According to Employer, Eat'n Park is inapplicable here because it was decided in the context of a reinstatement of benefits following a suspension, not a claim petition. Moreover, Employer claims it did not terminate Claimant for sustaining a work injury or negligence. Rather, Employer terminated Claimant because of his own misconduct of violating its safety procedures twice in a nine-month period.

---

[1] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037 (Pa. Cmwlth. 2011).

7

In Eat'n Park, the employer challenged the reinstatement of suspended benefits. The claimant sustained a work injury to her back and, after treatment, she returned to her pre-injury position as a waitress with no loss in earnings. A year after her return, she sought medical attention for her work injury and underwent an MRI. The employer terminated the claimant's employment the day it received the medical bill. The claimant testified her supervisor was upset about the bill and her continuing back problems. Although the employer presented evidence that it fired the claimant for cause because she entered a wrong code when she punched in for work that day, the WCJ credited the claimant's testimony surrounding her dismissal.

Ultimately, the WCJ found the employer discharged the claimant because of her work injury, not for cause unrelated to the injury. Once the claimant proved her loss of earnings was the result of her work injury, it was the employer's burden to prove the claimant's loss of earnings was caused by something other than the work injury, which it did not do. Id. Thus, the WCJ properly granted the claimant's reinstatement petition but suspended benefits as of the date the claimant found another job. On appeal, the Board affirmed the reinstatement, but it reversed the suspension of benefits because the claimant did not return to her pre-injury job with the employer or to a job that provided equal or greater compensation. On further appeal to this Court, we affirmed. Id. We held "[t]he relevant inquiry ... is whether [the] [c]laimant's loss in earnings was the result of [the] [c]laimant's work injury." Id. at 364 (citing Hertz-Penske Truck Leasing Co. v. Workmen's Comp. Appeal Bd. (Bowers), 684 A.2d 547 (Pa. 1996)).

8

Contrary to Employer's assertions, the Board did not misapply Eat'n Park here. Although Eat'n Park involved a reinstatement petition as opposed to a claim petition, the nature of the petition is not dispositive. The relevant inquiry was whether the work injury resulted in wage loss. Id.; see Cruz v. Workers' Comp. Appeal Bd. (Kennett Square Specialties), 99 A.3d 397, 407 (Pa. 2014) (claimant seeking workers' compensation benefits via a claim petition must prove the injury resulted in a loss of earning power); Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom), 2 A.3d 548 (Pa. 2010) (claimant seeking reinstatement of suspended benefits must prove his earning power is once again adversely affected by his disability).

If a claimant proves his wage loss is attributable to the work injury, he is entitled to benefits. Cruz; Eat'n Park. However, if the employer proves wage loss is attributable to some other cause, such as termination for misconduct or economic downturn, benefits are not warranted. See BJ's Wholesale Club v. Workers' Comp. Appeal Bd. (Pearson), 43 A.3d 559 (Pa. Cmwlth. 2012) (where the claimant's loss of earnings was a result of a termination for misconduct unrelated to the injury, the claimant was not entitled to disability benefits for that loss); Trevdan Bldg. Supply v. Workers' Comp. Appeal Bd. (Pope), 9 A.3d 1221 (Pa. Cmwlth. 2010) (where a claimant's wage loss was attributable to economic factors as opposed to the work injury, the claimant was not entitled to wage loss benefits).

Upon review, the Board properly applied the holding in Eat'n Park. We turn to whether Employer shouldered its burden of proving Claimant's wage loss was for reasons other than the work injury.

**B. Work Injury or Other Cause**

Employer contends the Board erred in determining Employer fired Claimant for sustaining a work injury. The WCJ found Employer justifiably terminated Claimant's employment for violating Employer's safety procedures twice within a nine-month period. Employer maintains the WCJ's findings in this regard are fully supported by the credited and uncontradicted testimony of Supervisor as well as Claimant's own testimony. Factual findings supported by substantial evidence are binding on appeal. It claims the Board impermissibly substituted its own interpretation of the facts.

The WCJ, as the ultimate fact-finder in workers' compensation cases, "has exclusive province over questions of credibility and evidentiary weight …." A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting Anderson v. Workers' Comp. Appeal Bd. (Penn Ctr. for Rehab), 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned. Id. The WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. Id. We are bound by the WCJ's credibility determinations. Id.

Moreover, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." Id. at 1238 (quoting Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating Inc.), 873 A.2d 25, 29 (Pa. Cmwlth. 2005)). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Id. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. Id.

Further, in a claim proceeding, the claimant bears the burden of proving all elements necessary for an award. Inglis House v. Workmen's Comp. Appeal Bd. (Reedy), 634 A.2d 592 (Pa. 1993). Specifically, the claimant must prove he suffered an injury in the course and scope of his employment, and the injury resulted in a loss of earning power. Cruz. For the claim to be compensable, there must be a causal connection between the work injury and wage loss. BJ's Wholesale.

Once a claimant meets this burden, he is entitled to benefits unless his employer can show the loss of earning power was caused by something other than the work injury. See id. For instance, "[w]here the claimant's loss of earnings is a result of a termination for misconduct unrelated to the injury, the requirement of causal connection to the work-related injury cannot be satisfied and claimant is not entitled to disability benefits for that loss." Id. at 563. For a termination to bar

disability benefits, the employer must show that the termination was for conduct that amounts to bad faith or a lack of good faith on the part of the claimant. Id. Under such circumstances, the claimant is not entitled to workers' compensation benefits because his loss of earnings was caused by his own actions, not by the work injury. Id.

In addition, an employer can raise an affirmative defense that a claimant's actions removed him from the course and scope of employment because he violated a positive work rule or order and that the violation removed the claimant from the course and scope of his employment. Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Serv. and Sentry Claims Serv.), 47 A.3d 206 (Pa. Cmwlth. 2012). To succeed with this defense, an employer must prove: "(1) the injury was, in fact, caused by the violation of the order or rule; (2) the employee actually knew of the order or rule; and (3) the order or rule implicated an activity not connected with the employee's work duties." Id. at 209 (quoting Nevin Trucking v. Workmen's Comp. Appeal Bd. (Murdock), 667 A.2d 262, 268 (Pa. Cmwlth. 1995)). However, "it shall not be a defense ... [t]hat the injury was caused in any degree by the negligence of such employe[e] ...." Section 201(c) of the Workers' Compensation Act (Act)[2]

Here, the WCJ found Employer discharged Claimant for violating its safety policy and procedures on two occasions within a nine-month period. F.F. No. 23. The WCJ found Claimant violated Employer's safety policy and procedures in February 2011, and he received a written reprimand for his conduct.

---

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §41(c).

12

F.F. No. 23. The WCJ found Claimant again violated Employer's safety policy and procedures, which caused the accident on September 1, 2011. F.F. No. 23. However, the WCJ's finding regarding the second safety violation is not supported by the evidence.

According to Supervisor, on September 1, 2011, Claimant was setting slips, which have handles on them. "[Y]ou have to lean down a little bit, and you set them. You release the handle, and then you stand back up." Reproduced Record (R.R.) at 253a. When Claimant stood back up, he hit the top of his hard hat on the bottom of the top drive. Id. Supervisor thought Claimant "faked" the injury because it was unclear how the injury even occurred. Id. at 255a. "This was highly unusual." Id. at 256a. According to the incident report, Claimant was bent at the back and not at the knees; in other words, "he didn't get low enough." Id. at 255a.

Supervisor testified his job duties for Employer included writing policy procedures and programs. Id. at 251a. When asked if there was an unsafe working procedure reported by the on-site manager that caused Claimant's injury, Supervisor responded:

> No. ... It was going by the book in this particular case. That's what was baffling everybody. No red flags were going off because it was running smoothly, and now we have someone claiming they [sic] got injured.

Supervisor testified Employer "made a management decision that [Claimant] was not working safely" because he was injured. Id. at 253a.

13

Although Employer asserted it terminated Claimant because the injury constituted his second safety violation within the year, there is no evidence to suggest Claimant did anything wrong other than sustain an injury. Employer did not identify a specific rule or policy or prove that Claimant's violation of the rule or policy caused the injury. Cf. Miller (claimant's operation of a forklift violated a positive work rule and was outside the course and scope of his employment as a pallet jack driver). The mere fact that Claimant was injured on the job, without more, does not prove a safety violation. Moreover, Employer did not show Claimant's conduct amounted to bad faith or a lack of good faith. See, e.g., BJ's Wholesale (the claimant's termination for intoxication on the job warranted denial of benefits). For these reasons, we conclude the WCJ's finding that Employer terminated Claimant for cause is not supported by substantial evidence. Thus, the Board properly determined Claimant sustained a compensable work injury and was entitled to benefits.

### C. Forfeiture of Benefits

Finally, Employer argues the Board erred by reversing the WCJ's determination that Claimant forfeited benefits based on his failure to timely supply unemployment compensation and income tax documentation. Relying on Brehm v. Workers' Compensation Appeal Board (Hygienic Sanitation Co.), 782 A.2d 1077 (Pa. Cmwlth. 2001), Employer asserts a WCJ may suspend benefits when a claimant refuses to provide financial information. Although Claimant eventually supplied the information, the Board's order does not address when Claimant provided the records, when the suspension was lifted relative to Claimant

14

providing the records, or otherwise address a credit for unemployment compensation benefits.

In Brehm, an employer petitioned to modify the claimant's compensation benefits alleging he was no longer entitled to total disability benefits because he collected wages at the same time he collected total disability benefits. At the hearing, the claimant acknowledged he received dividend income from his family business, but he denied receipt of wages. When the employer asked the claimant to provide copies of, or authorize the release of, his income tax records, the claimant refused. The WCJ suspended benefits because of the claimant's unjustified refusal to provide the information requested; the Board affirmed.

On appeal, the claimant challenged the suspension of benefits. We opined, with emphasis added:

> [The] [e]mployer and the WCJ were hampered at every turn by an uncooperative claimant. [The] [c]laimant refused to produce his federal income tax returns or release them to [the] [e]mployer and to the WCJ. In addition, [the] [c]laimant's responses, when queried about his former company's bonus program, were non-specific and equally uncooperative. [The] [c]laimant had sole possession, therefore, by control or influence in the family corporation, of the evidence that Employer needed to fulfill its burden. We feel that the instant matter is analogous to the [c]laimant who refuses to undergo a scheduled physical examination or a claimant who refuses to complete and return a verification form. Under those circumstances, we have held that a WCJ may properly suspend a claimant's benefits. So also we hold that a claimant who refuses to provide the financial information necessary to make a proper determination of his average weekly wage or information that is necessary

15

> to ascertain whether the claimant is working, may have workers' compensation benefits suspended until such information is provided and such a determination can be made.

Id. at 1084-85 (footnote omitted); accord Cruz.

Here, at the November 2012 hearing, the WCJ directed Claimant and his attorney to supply information showing his gross and net receipt of unemployment compensation. N.T., 11/13/12, at 55-56. In addition, Employer subpoenaed Claimant's income tax returns for the years 2011 and 2012, and it requested the return of this information before December 5, 2013. Claimant admits he did not act timely in furnishing this information.[3] Employer ultimately submitted the information to the WCJ in February 2014. F.F. No. 22. The WCJ admitted the evidence into the record prior to rendering his opinion. F.F. No. 22.

Brehm authorizes a WCJ to "suspend" benefits "until such information is provided." Id. at 1085. However, it does not authorize the forfeiture of benefits as a sanction after the information is provided. See id. By applying Brehm in this manner, the WCJ erred. The Board properly reversed the forfeiture of benefits as the information was provided.

Notwithstanding the Board's reversal, the Board did not address the issue of whether Employer is entitled to a credit offset based on Claimant's receipt of unemployment compensation benefits. See Section 204(a) of the Act, 77 P.S. §71(a) (an employer is entitled to a credit against workers' compensation

---

[3] Claimant states he provided the information by January 13, 2014. Resp't's Br. at 21.

16

benefits for unemployment compensation benefits); <u>see</u> <u>also</u> <u>Costa v. Workers'</u> <u>Comp. Appeal Bd. (Carlisle Corp.)</u>, 958 A.2d 596, 600 (Pa. Cmwlth. 2008) (a claimant must have the opportunity to contest the amount of a credit claimed by employer and to have a hearing where there is a disagreement on the amount). As this issue remains unresolved, it is necessary to remand to the Board to further remand to the WCJ for further proceedings for the purpose of making findings of fact and conclusions of law regarding a credit offset.

## IV. Conclusion

Accordingly, we affirm the determination of the Board, but we remand for further proceedings consistent with this opinion.


ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pioneer Drilling,

           Petitioner

        v.

Workers' Compensation Appeal
Board (Crowley),

           Respondent

:
:
:
:
: No. 792 C.D. 2015
:
:
:
:
:

## **O R D E R**

**AND NOW**, this 17th day of December, 2015, the order of the Workers' Compensation Appeal Board is **AFFIRMED**, and this matter is **REMANDED** for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

ROBERT SIMPSON, Judge