IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth P. Marinack,                :
              Petitioner          :
                                    :
         v.                     :   No.  1161 C.D. 2022
                                    :
City of Pittsburgh (Workers'     :
Compensation Appeal Board),     :
              Respondent     :


City of Pittsburgh,               :
              Petitioner          :
                                    :
         v.                     :   No.  1163 C.D. 2022
                                    :
Kenneth P. Marinack (Workers'   :
Compensation Appeal Board),     :   Submitted: May 23, 2024
              Respondent     :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE LORI A. DUMAS, Judge


OPINION
BY JUDGE McCULLOUGH                           FILED: July 12, 2024

Before the Court are the consolidated petitions for review filed by Kenneth P. Marinack (Claimant) and the City of Pittsburgh (Employer) seeking review of the September 27, 2022 decision of the Workers' Compensation Appeal Board (Board), affirming the decision of Workers' Compensation Judge (WCJ) Anne Crilley. WCJ Crilley granted in part and denied in part Claimant's petition to reinstate benefits he received in connection with a 2004 work injury he sustained during his employment

as a firefighter for Employer (Reinstatement Petition). For the reasons set forth below, we reverse the Board's order.

## I. Background

This case has a protracted procedural history that we recount to the extent necessary to dispose of the parties' issues on appeal. Claimant was injured on May 21, 2004, when he fell in a stairwell while pulling down a ceiling in a burning building. He was 42 years old at the time. Employer issued a Notice of Compensation Payable (NCP) describing the accepted injury as a left shoulder rotator cuff tear and an aggravation of degenerative disc disease in the low back. Pursuant to the NCP, Claimant collected compensation benefits in the amount of $690 per week.

### A. 2008 Litigation

On September 24, 2008, Employer filed a petition to suspend Claimant's compensation benefits as of September 16, 2008, alleging that he had retired and had voluntarily removed himself from the workforce. On October 27, 2009, WCJ Nathan Cohen found in favor of Employer and suspended Claimant's benefits as of September 2008. The Board reversed on appeal, concluding that the evidence showed that Employer had fired Claimant, rather than that Claimant had voluntary withdrawn from the workforce. Employer petitioned this Court for review, and we affirmed the Board in *City of Pittsburgh v. Workers' Compensation Appeal Board* (*Marinack*) (Pa. Cmwlth., No. 100 C.D. 2011, filed February 7, 2012). We based our decision on *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 4 A.3d 1130 (Pa. Cmwlth. 2010) (plurality op.) (*Robinson I*), *affirmed*, 67 A.3d 1194 (Pa. 2013) (*Robinson II*), which at that time was pending before the Pennsylvania Supreme Court.

Employer petitioned for allowance of appeal to the Supreme Court. By that time, that Court had decided *Robinson II*, which established a new analytical

2

framework for determining whether an employee receiving workers' compensation benefits has withdrawn from the workforce. *Robinson II*, 67 A.3d at 1209. The Supreme Court vacated this Court's order and remanded for reconsideration in light of *Robinson II*. We, in turn, remanded the matter for the WCJ to make factual findings regarding Claimant's separation from the workforce. On remand, the WCJ ruled that Employer failed to prove that Claimant had voluntarily removed himself from the workforce and denied Employer's petition to suspend Claimant's benefits. The Board issued an opinion and order on November 30, 2016, affirming the WCJ's decision. We affirmed the Board in *City of Pittsburgh v. Workers' Compensation Appeal Board (Marinack)* (Pa. Cmwlth., No. 2048 C.D. 2016, filed Aug. 21, 2017), 2017 WL 3585193.

### B. 2010 Litigation

Meanwhile, in separate litigation between the parties, Employer filed a petition to suspend or modify Claimant's benefits on December 27, 2010, alleging that Claimant had been self-employed as a handyman since his injury. Employer requested a hearing to obtain information concerning Claimant's earnings during the relevant period. Claimant also filed a review petition alleging an incorrect description of his injury and that a neck injury should be included. (Supplemental Reproduced Record (S.R.) at 5b, 7b.) Specifically, Claimant alleged that in 2009, he was in a motor vehicle accident and had "increased" neck problems. He then had neck surgery in December 2009, and during physical therapy of his neck, he "started developing some additional problems with his back" and this led to his March 11, 2009 low back surgery. (S.R. at 7b.)

3

The petitions were assigned to WCJ Irving Bloom. In support of its petition to suspend or modify benefits, Employer offered Claimant's LIBC-750[1] and LIBC-760[2] forms that Claimant had completed. In all forms up to 2008, Claimant "verified" that he was neither employed nor self-employed at any time while receiving workers' compensation benefits. (S.R. at 5b.) In his January 25, 2011 LIBC-750 forms, he approximated $2,500 in earnings from May 2009 to December 2009. In other LIBC-750 forms filed afterwards, Claimant represented that his earnings for the same period were "less than $1,500." (S.R. at 8b.) Employer offered Claimant's deposition during which Claimant admitted he had a construction business since 1996, and that on June 7, 2004, approximately one week after his injury, he executed a contract for a project for which he received $11,000. (S.R. at 5b.) Claimant, however, did not report this on his income tax return because he lost money on the project and did not believe it was income. *Id.* Before WCJ Bloom, Claimant testified that he had two or three handyman jobs in 2009 but did not work after December 2009. He claimed that after his indemnity benefits were discontinued via the October 27, 2009 decision, he had to borrow about $4,000 from his daughter and $500 from his aunt to make ends meet. (S.R. at 10b.) Employer introduced invoices, receipts, work proposals, and bank records to counter Claimant's claim of lack of earnings outside of his workers' compensation benefits. Only one proposal separated the labor and material costs.

---

[1] Under the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2710, the LIBC-750 requires employees receiving benefits to report earnings from employment or self-employment within 30 days. Section 311.1 of the Act, added by the Act of June 24, 1996, P.L. 350 77 P.S. § 631.1(a).

[2] The purpose of the LIBC-760 is to inform an employer of the claimant's work status and medical condition. It is a verification by the employee that his status regarding the entitlement to receive compensation has not changed and a notation of any changes of which the employee is aware at the time the employee completes the verification, including employment, self-employment, wages and change in physical condition. 77 P.S. § 631.1(d).

There was no designation on the invoices and receipts to identify the proposal to which it corresponded. The tax records had no tax year or obvious relation to Claimant's self-employment activities. As noted by WCJ Bloom, there were also multiple references to deposits made that did not correlate with Claimant's testimony. (S.R. at 11b-12b.) For example, in November and December 2009, Claimant made deposits in the amount of $300 and $500, after the October 27, 2009 decision terminating his benefits, so these amounts were not indemnity benefits. (S.R. at 13b.) Also, in November and December 2009, Claimant deposited $2,750.25. Again, this was after the October 27, 2009 decision terminating his benefits. *Id.* In February 2011, Claimant deposited $750, which was after the October 27, 2009 decision terminating his benefits and during the timeframe Claimant was allegedly without income and not otherwise working. *Id.* In May and June 2011, Claimant deposited $2,000, which was after the October 27, 2009 decision terminating his benefits and during the timeframe Claimant was allegedly without income and not otherwise working. (S.R. at 14b.)

On March 27, 2014, WCJ Bloom suspended Claimant's benefits as of June 2009 based on his findings that Claimant's testimony as to his allegations concerning the nature of his business was not credible and that he failed to provide Employer with the information necessary to determine his earnings in 2009. In resolving the suspension petition, WCJ Bloom made the following findings regarding Claimant's credibility:

> 39. Based upon review, and having had the opportunity to observe [C]laimant's demeanor, this Workers' Compensation Judge makes the following credibility determinations:
>
> This Workers' Compensation Judge finds [C]laimant **not credible as to his allegations, concerning the nature of his business.** Specifically, [C]laimant's answers during

5

testimony were **evasive, inconsistent and contrary to other evidence of record**. In fact, this Judge had to repeatedly instruct [C]laimant to answer the questions asked on cross-examination.

This Workers' Compensation Judge finds it difficult to reconcile [C]laimant's various positions taken, which seemingly change depending on his claim status.

\* \* \* \*

40. [W]hen [C]laimant benefitted from averring that he was not working during litigation, he was either unable to work or simply not working. When [C]laimant benefitted from averring that he was working during litigation, he was able to produce limited information suggesting he was working, but with little "income" by his own report. Claimant would have this Workers' Compensation Judge believe that the only time he had self-employment earnings was in 2004 (when his self-employment came to light and resulted in his discharge) and in 2009 - which only commenced after his March 2009 deposition, but only disclosed after he did not prevail.

This Workers' Compensation Judge recognizes that [C]laimant would allege that this was a "small business" and that he made little to no money. However, and for this Judge to credit the same, then [C]laimant must be found credible. **Simply stated [C]laimant is not found credible**. Further, [C]laimant asserts that following expenses, he made no money, yet, and again, he seemingly has little to no records - which would be in his sole possession - to confirm that he made no money, or that his expenses resulted in "no income".

\* \* \* \*

42. This case thus presents this Workers' Compensation Judge with one of two options as to [C]laimant's credibility. At worst, [C]laimant has knowingly misrepresented and/or withheld information as to his self-employment at various times during his claim. If this the case, then [C]laimant cannot benefit from his own malfeasance. At best,

6

[C]laimant was mistaken as to what had to be reported and when it was to be reported, and otherwise engaged in poor record keeping to confirm his averments. Yet, neither alternative allows this Judge to find him credible or to find in his favor.

(S.R. at 14b-17b) (emphasis added).

WCJ Bloom then concluded

[w]here a claimant is uncooperative as to earning power information, including the refusal or failure to provide federal income tax returns or releases, benefits may be suspended. Claimant was directed by this Workers' Compensation Judge and a prior [WCJ] to produce data relative to his business. This Workers' Compensation Judge notes that [C]laimant submitted much documentation with little or no information as to his self-employment. **There was a lack of correlation with [C]laimant's testimony as to amounts received and the net and gross amounts resulting**. Under these circumstances, a suspension is fully justified.

(S.R. at 17b) (emphasis added).

Regarding Claimant's review petition, WCJ Bloom denied it as he concluded that Claimant presented insufficient evidence to warrant the further amendment of the injury description. WCJ Bloom noted that the March 17, 2011 operative report of Dr. Patrick Smith "discusses the surgery on said date, but does not address the cause of the same." (S.R. at 14b.)

The Board affirmed WCJ Bloom's decision, and Claimant petitioned for this Court's review. This Court affirmed, holding that because Claimant stated that he was engaged in self-employment projects but did not provide Employer with adequate information to ascertain his earnings, suspension of Claimant's benefits was appropriate. *Marinack v. Workers' Compensation Appeal Board* (*City of Pittsburgh*

*Fire Bureau*) (Pa. Cmwlth., No. 871 C.D. 2015, filed Feb. 19, 2016), 2016 WL 683295, at *7.

## C. 2016 Reinstatement Petition

On November 21, 2016, Claimant filed the instant Reinstatement Petition seeking the reinstatement of benefits, alleging a worsening of his work-related condition.[3] Claimant indicated a date of onset of March 17, 2011, for the change in condition when he underwent low back surgery to treat his back issues. (Reproduced Record (R.R.) at 270a.) In support, he submitted the deposition of his surgeon, Dr. Patrick N. Smith, who testified that Claimant reported complaints of low back pain, and pain into his legs. Dr. Smith performed a lumbar laminectomy and decompression on March 17, 2011. (R.R. at 136a-37a.) He performed a revision laminectomy in December of 2011 and fusion from L2-S1. He opined that Claimant had an aggravation of his lower lumbar degenerative disc disease which resulted in the need for the two surgeries. He opined that it was caused by the work injury in May of 2004.

At a hearing before WCJ Crilley on November 20, 2018, Claimant handed Employer's counsel a completed verification LIBC-760 form dated June 22, 2018, which indicated that **he was not currently employed or self-employed**, that he was self-employed from May 1, 2009, to December 1, 2009, and that he earned "less than $1,500.00." (R.R. at 195a-96a, 248a.) Regarding the period from May 1, 2009, to December 1, 2009, he testified that he had attempted to perform work as a handyman and during that time earned less than $1,500. Otherwise, he has had no other earnings.

---

[3] We note that under the Act, a WCJ may, at any time, modify, reinstate, suspend, or terminate an NCP upon petition filed by either party, upon proof that the disability of an injured employee has increased, decreased, recurred, or has temporarily or finally ceased. Section 413(a) of the Act, 77 P.S. § 772.

Claimant also presented a written summary of his injuries which was admitted into evidence, without objection.

WCJ Crilley denied Claimant's Reinstatement Petition by Decision and Order circulated June 12, 2019. In doing so, WCJ Crilley determined that Claimant's request for reinstatement of benefits retroactive to 2011, due to worsening of his condition, had already been addressed by WCJ Bloom and was, therefore, barred by the doctrine of technical *res judicata* and/or collateral estoppel and by this Court's decision in *Weney v. Workers' Compensation Appeal Board (Mac Sprinkler Systems, Inc.)*, 960 A.2d 949 (Pa. Cmwlth. 2008).[4] (R.R. at 276a-77a.)

Next, WCJ Crilley addressed Employer's argument that the suspension of Claimant's benefits should remain in place because WCJ Bloom had previously rejected Claimant's credibility as to his 2009 earnings "based on [] Claimant's failure and/or refusal to provide documentation of self-employment earnings." (R.R. at 270a.) WCJ Crilley concluded that although Claimant's benefits were previously suspended for his failure to return relevant self-employment earning information, Claimant had credibly testified before her "that he performed handyman work under his own business name from May 1, 2009, to December 1, 2009, earning approximately $1,500. He returned LIBC forms at the hearing held on November 20, 2018." (R.R. 274a.) Noting the *de minimis* nature of the earnings, WCJ Crilley found that Claimant met the requirement of reporting information at least as of November 20, 2018. (R.R. at 275a.)

---

[4] As we will discuss in detail *infra*, the *Weney* Court held that a claimant's review petition seeking to amend the description of his injury in the NCP to include additional injuries of which he was aware and knew to be related to his work injury during earlier review petition proceedings was barred from doing so by the doctrine of technical *res judicata*. *Weney,* 960 A.2d at 957.

9

Claimant appealed the decision to the Board, which by order entered June 5, 2020, affirmed WCJ Crilley's decision on the issue of *res judicata*. The Board explained its rationale as follows:

> [T]his issue is one of technical *res judicata* because the parties were aware of the surgery during the [2010] litigation. **Although Claimant did not actually litigate the specific issue of whether his March 2011 surgery caused wage loss benefits during those proceedings, the parties clearly established that Claimant should have done so**. Claimant testified, and [WCJ Bloom] found, that Claimant had neck surgery in December 2009, and Claimant developed back pain during the resulting physical therapy. 'This led to a March 2011 low back surgery.' (March 27, 2014 Decision and Order, Finding of Fact No. 19.) **Thus, this testimony and finding provides concrete evidence that Claimant was aware of this low back injury and its relatedness to the work incident during the earlier litigation**. **As Claimant was aware of such, he should have litigated the injury at that time**. **Therefore, Claimant's Reinstatement Petition is barred by the doctrine of technical *res judicata***.

(R.R. 301a-302a) (emphasis added).

However, the Board went on to find that the issue of *res judicata* "is not [wholly] dispositive of whether Claimant is entitled to a reinstatement of wage loss benefits," as WCJ Crilley had also determined that Claimant had provided the information required to cure the suspension of his benefits by submitting information related to his 2009 self-employment. (R.R. at 302a.) Because WCJ Crilley did not award a reinstatement of benefits on this basis or make further findings of fact or conclusions of law in this regard, the Board remanded the matter for WCJ Crilley to decide if Claimant is entitled to a reinstatement of benefits as of November 20, 2018. The Board explained:

10

Claimant testified that between May 1, 2009 and December 1, 2009, he earned approximately $1,500. The WCJ found Claimant to be credible and persuasive, and she noted that Claimant returned the LIBC forms at the hearing on November 20, 2018. . . . We determine that we are unable to effectuate meaningful appellate review as the WCJ has an apparent contradiction in the Decision and Order, and we vacate and remand. Although [Employer] argues that the parties contested this issue in the previous 2014 litigation, Section 311.1(g) clearly gives the right to Claimant to cure his mistake by returning the verification form. 77 P.S. § 631.1(g) ("If the employe fails to return the completed verification form within thirty days, the insurer is permitted to suspend compensation **until the completed verification form is returned**.") [(Emphasis added.)] Claimant can cure his failure to supply the necessary information at any time, and thus, be entitled to a reinstatement of benefits. However, the WCJ did not award a reinstatement of benefits, nor did the WCJ make further findings of fact or conclusions of law in this regard. We thus remand for the WCJ to decide if Claimant is entitled to a reinstatement of benefits as of November 20, 2018.

(R.R. at 304a-05a) (emphasis in original, citations omitted). The Board affirmed WCJ Crilley's decision and order in all other respects.

On remand, by decision and order circulated September 27, 2021, WCJ Crilley determined that Claimant returned the necessary information to cure his failure to supply Employer with the reporting information, and found he was entitled to a reinstatement of benefits as of November 20, 2018. (R.R. 330a-32a.) WCJ Crilley specifically credited Claimant's testimony that he earned $1,500 between May 1, 2009, and December 1, 2009, and affirmed the previous decision in all other respects.

11

Claimant and Employer both appealed WCJ Crilley's decision to the Board, which affirmed. This appeal followed.[5]

## II. Claimant's Appeal

Claimant challenges the Board's application of technical *res judicata* to his Reinstatement Petition and maintains that he is entitled to a reinstatement of his benefits as of March 17, 2011, the date he underwent surgery to alleviate his worsening work-related condition. (Claimant's Br., at 11-15.) Claimant contends that the Board's reliance on *Weney* is misplaced, as *Weney* addressed a claimant's effort to amend the description of his work injury, while this case involves a reinstatement of benefits because his work-related condition has worsened. (*Id.* at 13.)

Initially, we observe that technical *res judicata* and collateral estoppel are both encompassed within the parent doctrine of *res judicata*, which prevents the relitigation of claims and issues in subsequent proceedings. *Scott v. Delaware Valley Regional Planning Commission*, 56 A.3d 40, 43 (Pa. Cmwlth. 2012) (*en banc*). "Under the doctrine of technical *res judicata*, often referred to as claim preclusion, when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded." *Id.* In order for technical *res judicata* to apply there must be identity of the (1) thing sued upon or for; (2) cause of action; (3) persons and parties to the action; and (4) quality or capacity of the parties suing or sued. *Id.* Additionally, "technical *res judicata* may be applied to bar claims that were actually litigated **as well as those matters that should have been litigated**." *Id.* (emphasis added).

In *Weney,* the parties revolved the claimant's first review petition through a stipulation where they agreed to amend the NCP to include a left shoulder injury.

---

[5] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated." *Weney*, 960 A.2d at 953 n.1.

12

*Weney*, 960 A.2d at 951. Shortly after the WCJ adopted the stipulation, the claimant filed another review petition to amend the NCP to add neck and cervical spine injuries. *Id.* at 951–53. This Court held that the doctrine of technical *res judicata* barred the claimant's second review petition, as the subject matter and ultimate issue of both proceedings concerned the nature and extent of the claimant's work injuries and the NCP's description of those injuries. We specifically held that "although Claimant did not actually litigate the specific issue of his neck or cervical spine injury during the earlier proceedings on his Review Petition I, the record evidence clearly establishes that he should have done so." *Id.* at 955. We reasoned that the record plainly reflected that the claimant was fully aware of the injury to his neck or cervical spine and its relatedness to the work incident during the first proceeding.

Likewise here, both the 2010 litigation before the WCJ, which spanned approximately three years, and the current proceeding involve the nature and extent of Claimant's work injury and his entitlement to benefits as a result thereof. While the alleged date of onset of Claimant's worsening condition necessitating the March 2011 back surgery was not adjudicated in the previous litigation, he did testify about that surgery at a November 2011 hearing in which he detailed the circumstances leading up to the procedure, including that he began to "develop some additional problems with his back" during physical therapy for a neck injury. (S.R. at 7b.) Given that Claimant was well aware of the worsening of his low back injury during the prior proceeding, we agree with the Board that technical *res judicata* bars his claim of a worsening condition, as it was a matter that should have been litigated in the earlier proceeding. *Scott,* 56 A.3d at 43. Accordingly, Claimant's issue lacks merit.

### III.    Employer's Cross-Appeal

13

In its cross-appeal, Employer argues that WCJ Crilley and the Board erred in ruling that Claimant is entitled to a reinstatement of benefits as of November 20, 2018, which is the date Claimant returned the LIBC-760 form to Employer. It argues that this decision was a culmination of errors, the first being WCJ Crilley's consideration of Claimant's 2018 testimony as to his earnings in 2009 and the 2018 LIBC-760 form dated June 22, 2018. Employer contends that WCJ Crilley mistakenly proceeded on the theory that WCJ Bloom had suspended Claimant's benefits for "the failure to return relevant earning information" when, in fact, WCJ Bloom had rejected the earning information and Claimant's testimony as not credible. In other words, WCJ Bloom did not believe that Claimant only earned $1,500 between May 1, 2009, and December 1, 2009, and found, therefore, Claimant did not provide Employer the information needed to determine his earnings. Despite WCJ Bloom's prior rejection of this same testimony and evidence as not credible, WCJ Crilley revisited the issue and credited Claimant's "proof" of earnings during the timeframe of "from May 1, 2009 to December 1, 2009," and credited that during this timeframe, he earned "less than $1,500." Employer contends that this was a collateral attack on a prior decision and was inherently inconsistent with WCJ Bloom's 2014 decision, which is now law of the case.

Employer argues that the Board perpetuated these errors in its June 5, 2020 decision, by (1) incorrectly concluding that WCJ Bloom suspended Claimant's benefits for non-return of the LIBC-760 form pursuant to Section 311.1 of the Act, 77 P.S. § 631.1; (2) ruling that Claimant could "cure" his mistake by simply returning the LIBC-760 form pursuant to Section 311.1(g) of the Act, 77 P.S. § 631.1(g);[6] and (3)

---

[6] Pursuant to Section 311.1 of the Act, 77 P.S. § 631.1, when a claimant is receiving compensation benefits, the employee is obligated to provide information as to employment or self-

**(Footnote continued on next page…)**

14

remanding to WCJ Crilley to decide if Claimant was entitled to reinstatement when he returned the LIBC-760 form in November 2018 that set forth his earnings in 2009 as less than $1,500.

We must agree with Employer that reinstatement of wage loss benefits in this circumstance was in error. Again, this litigation commenced when Claimant filed a reinstatement petition, claiming a loss of earning power **based on a worsening of his condition**, which rendered him totally disabled as of September 1, 2016, later amended to March 17, 2011. Claimant did not allege that he was entitled to a reinstatement as he would now present adequate and credible information as to self-employment earnings so as to cure his suspension. He never asserted that his "suspended" benefits should be "reinstated" due to the return of the LIBC forms. Similarly, Claimant never argued that the return of the LIBC-760 or his testimony "cured" the prior basis of suspension.

In her June 12, 2019 decision, WCJ Crilley found that the reinstatement petition was **barred by estoppel**. She did not award a reinstatement of benefits. Nevertheless, and, although never alleged by Claimant as a basis for reinstatement, the Board remanded to WCJ Crilley, noting that under Section 311.1 of the Act, "Claimant can cure his [prior] failure [before WCJ Bloom] to supply the necessary information at any time, and thus, be entitled to a reinstatement of benefits." (R.R. at 305a.)

On remand, WCJ Crilley reinstated Claimant's benefits. That is, she "lifted the suspension" based on Claimant's completion and return of the LIBC-760 to Employer and based on Claimant's testimony that between May 1, 2009, and

---

employment to the employer. Section 311.1(g) of the Act, provides "if the employe fails to return the completed verification form within 30 days, the insurer is permitted to suspend compensation **until the completed verification form is returned**." 77 P.S. § 631.1(g) (emphasis added).

15

December 1, 2009, he earned approximately $1,500, which she found credible. There are several problems with the way this unfolded.

First, Claimant's benefits were not in a suspension status pursuant to any LIBC-762 ("Notice of Suspension for Failure to Return LIBC-760"). 34 Pa. Code § 123.502(a-e). WCJ Bloom did not suspend Claimant's benefits on March 27, 2014, because Claimant failed to return the LIBC-760 to Employer. The Bloom Decision did not reference the failure to return the LIBC-760 or the issuance of the LIBC-762 as the basis for the suspension. Rather, WCJ Bloom suspended Claimant's benefits because he did not believe Claimant's testimony that he only earned $1,500 from May 2009 to December 2009. Based on all the evidence, he thought Claimant failed to tell the truth about earning only $1,500 during that period, and that in those circumstances where Claimant's earnings cannot be determined, a suspension was justified. Simply returning a new LIBC-760 to Employer on November 20, 2018, nine years later, which contained the same exact information that WCJ Bloom had previously rejected as not credible, did not cure anything. Thus, the provisions of the Act cited by the Board in support of the original remand – which require reinstatement upon return of the LIBC-760, without further analysis as to the credibility of the averments therein - were inapplicable.

In remanding the matter to WCJ Crilley, the Board also relied on *Brehm v. Workers' Compensation Appeal Board (Hygienic Sanitation Co. & Zurich Ins. Co.)*, 782 A.2d 1077, 1085 (Pa. Cmwlth. 2001). The case is, however, distinguishable. In *Brehm*, an injured employee's workers' compensation benefits were suspended after the employer introduced evidence at a hearing on its petition to modify benefits which indicated that its investigation had revealed that the employee was earning wages from another company during the period he was receiving benefits. The employer also

16

produced the Internal Revenue Service W-2 forms of the employee from the second company. While the employee acknowledged at the hearing that he had received some income for the period in question, he refused to provide copies of his tax returns and did not answer questions posed to him at the hearing relating to his income for the period in question. The WCJ suspended the employee's benefits for failing to provide information regarding his income. This Court upheld the suspension, holding that "a claimant who refuses to provide the financial information necessary to make a proper determination of his average weekly wage or information that is necessary to ascertain whether the claimant is working, may have workers' compensation benefits suspended until such information is provided and such a determination can be made." *Id.* at 1085.

Here, contrary to the Board's assessment, this was not simply a matter of the suspension of benefit checks until Claimant returned the proper forms under Section 311.1 of the Act. Additionally, as mentioned, Claimant never raised this as a basis for seeking reinstatement of benefits. His counsel did not suggest that relief was being sought due to the same, nor that this "cured" the suspension. Instead, it was noted that the return of the forms at the November 20, 2018 hearing as "a procedural thing." (R.R. at 249a.) Therefore, we must agree with Employer that the Board erroneously remanded to WCJ Crilley to decide if Claimant was entitled to reinstatement when he "returned the forms" in November 2018. (R.R. at 305a.)

For all of the foregoing reasons, we conclude that Claimant's issues on appeal merit no relief. We reverse the order of the Board, and reinstate WCJ Crilley's June 12, 2019 decision denying Claimant's reinstatement petition.

_____
PATRICIA A. McCULLOUGH, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth P. Marinak,
          Petitioner

        v.

City of Pittsburgh (Workers'
Compensation Appeal Board),
          Respondent

:
:
:
:
:
:
:
:
:
:
:

No.  1161 C.D. 2022

 

City of Pittsburgh,
         Petitioner

        v.

Kenneth P. Marinack (Workers'
Compensation Appeal Board),
         Respondent

:
:
:
:
:
:
:
:
:
:

No.  1163 C.D. 2022

## ***ORDER***

AND NOW, this 12th day of July, 2024, the September 27, 2022 decision of the Workers' Compensation Appeal Board is hereby REVERSED. The June 12, 2019 decision of Workers' Compensation Judge Anne Crilley denying Claimant's reinstatement petition is reinstated.

 

_____
PATRICIA A. McCULLOUGH, Judge